## THE DAVIS-SCOFIELD COMPANY *vs.* AGRICULTURAL INSURANCE COMPANY.

Third Judicial District, Bridgeport, October Term, 1928.
WHEELER, C. J., MALTBIE, HAINES, BANKS AND YEOMANS, Js.

Argued November 1st, 1928—decided March 7th, 1929.

676

*Philip Pond* and *Joseph B. Morse,* for the appellant (plaintiff).

*Abraham Wofsey,* with whom was *Michael Wofsey* and, on the brief, *Samuel Gordon,* for the appellee (defendant).

WHEELER, C. J.   To the actions by the plaintiff to recover its loss by fire under the policies issued by the defendant it pleaded (1) a general denial, (2) the fraudulent concealment by Scofield of these facts to induce the insurer to issue to plaintiff this policy of insurance, viz: his falsification of the books of the company, his embezzlements, his attempt to set fire to plaintiff's plant on November 15th, 1926, his procuring of fire insurance policy on plaintiff's plant and assets with the intention of destroying by fire its books and assets and then filing proofs of loss based upon a greatly exaggerated book value of assets resulting from false entries, and by these means inducing defendant to issue the policy in the belief that it was obtained in good faith.   The finding in substance supports the allegations of the second defense.

The first attack of the appeal is upon the ruling of the court that Scofield's concealment of his embezzlement, the falsification of the books and the setting of fires were material to the risk involved in the contract of insurance and were known to the plaintiff.   The policy issued by the defendant was in the standard form and in accordance with General Statutes, § 4075, which provides: "This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance surrounding this insurance or the subject thereof."   A

fact is material to the consideration of a contract of insurance when, in the judgment of reasonably careful and intelligent persons, it would so increase the degree or character of the risk of the insurance as to substantially influence its issuance, or substantially affect the rate of premium. *Penn Mutual Life Ins. Co.* v. *Mechanics Savings Bank & Trust Co.,* 72 Fed. 413, 428, 429; *Clark* v. *Union Mutual Fire Ins. Co.,* 40 N. H. 333, 338. The continued and continuing embezzlement of the general manager of a business in his entire control would be a fact which would affect the judgment of the reasonable, careful and intelligent person in the issuance of a policy of fire insurance. It would indicate that the embezzler might seek escape from the consequences of his misconduct by burning the evidence of his guilt. The falsification of the books would lead to a like inference. The failure to carry insurance during a long period of embezzlement and falsification of the books followed by the seeking of insurance greatly in excess of the assets would, in connection with the embezzlement, increase the probability that the embezzler secured the insurance with the intention of burning the assets, and thus destroying the evidence of his guilt and at the same time recouping for his company the losses through his embezzlements. The books of account of the plaintiff showing stock on hand largely in excess of the fact would be the first resort of the insurer in testing the claimed loss by fire. Their existence with the consequent risk of exposure would be an inducing cause for their destruction by fire by the embezzler who had caused the false entries to be made. Shortly prior to the time of the application for insurance Scofield had set fire to plaintiff's plant and afterward attempted to hire another to cause its destruction by fire. Facts such as these we have held material

to an insurance risk and their concealment by the insured from the insurer cause for voiding the insurance.

In *Beebe* v. *Hartford County Mutual Fire Ins. Co.*, 25 Conn. 61, 63, we said: "Undoubtedly, the insurer is understood to take the risk upon the supposition that nothing material exists that is not fully disclosed. And the fact that his buildings had been on fire a number of times shortly before the insurance was effected, was certainly a very material circumstance, which, if not disclosed, would have rendered the policy void. Such an unusual occurrence tended to a suspicion that incendiaries had attempted and might again attempt to fire his buildings; and this concealment—and silence on such a subject would amount to concealment—would operate as a fraud upon the insurer and render the policy void."

The case before us does not rest upon circumstances of suspicion, but upon the facts found, that Scofield had attempted to destroy the plant and its contents just prior to his placing the insurance upon them and at that very time intended to destroy, or cause them to be destroyed. The facts to which we have referred are found by the court to have been material to the risk. The court has also found as a conclusion that these facts were material to the risk. The conclusion is one of fact amply supported by the subordinate facts found. The materiality of a fact to the risk involved in the issuance of a contract of insurance is a conclusion of fact, unreviewable when legitimately drawn from the subordinate facts.

A concealment of an insured in an application for a fire insurance policy is the nondisclosure of a fact pertinent to the risk in the contract of insurance. When the concealment is of a material fact affecting the risk, known to the insured and unknown to the insurer, we hold it to be a fraud upon the insurer which ren-

ders the policy voidable. *Beebe* v. *Hartford County Mutual Fire Ins. Co., supra.* While this case holds that the policy is void, we now hold a contract obtained by fraud is voidable and not void; *Dwyer* v. *Redmond,* 100 Conn. 393, 397, 398, 124 Atl. 7; but the standard form of policy prescribed by § 4075 of the General Statutes, which we have quoted, determines such a policy to be void. The concealment may be of a physical risk against which the insurer can more easily guard than against the moral risk, which is intangible and subjective. That, as the appellee points out, may affect the honesty of the insured, his financial condition from which he dreads exposure, disgrace and punishment and seeks the opportunity of avoiding this by setting fire to the subject-matter of the insurance, and his entertainment of the fraudulent intention at the time of the application for the insurance. The concealment under these circumstances, irrespective of the fraudulent intention, is a fraud upon the insurer. All of the facts thus concealed by Scofield increased the moral risk to a material degree. Aside from this, the trial court has found that Scofield's concealment of these facts from the insurer was an intentional fraud upon them. This conclusion as one of fact was fully justified in the subordinate facts. *Criscuolo* v. *Societa Monarchica,* 89 Conn. 249, 93 Atl. 532. The facts found by the trial court show not only a nondisclosure of material facts, but also of facts which the agent of the insured, through its relation to the insurer, was under a legal duty to disclose to them. Failure of the agent to make disclosure of these facts under the circumstances constituted a concealment of these facts. And the concealment of them was a fraud, as the court concluded. *Watertown Savings Bank* v. *Mattoon,* 78 Conn. 388, 393, 62 Atl. 622.

We reach the final question in the case—was the

concealment of these facts by Scofield imputable to the plaintiff? If so, the defendant insurer is entitled to avoid this contract of insurance because it was obtained by Scofield when he fraudulently concealed from the insurer material facts knowledge of which he had gained in the course of his agency. "The rule that the knowledge of the agent is the knowledge of the principal if the agent acquired it while acting for the principal, in the course of the transaction which is in question, rests on the ground that the agent stands, for that transaction, in the place of the principal, and in effect is the principal, so far as concerns the rights of the other party." *Ward* v. *Metropolitan Life Ins. Co.*, 66 Conn. 227, 240, 33 Atl. 902; *Resnik* v. *Morganstern*, 100 Conn. 38, 42, 122 Atl. 910.

The finding of the trial court makes it impossible to contest the fact that Scofield's acts were performed and knowledge obtained in the course of his agency and that his purpose to defraud the insurer by setting fire to plaintiff's plant originated during his agency. The finding is equally clear that the plaintiff had no actual knowledge of Scofield's acts or intention. To the general rule that the law imputes to the principal knowledge gained by the agent while acting as such agent in the course of his agency, the plaintiff interposes the exception to the rule—that the presumption does not hold when the agent, though nominally acting as such, is in reality acting in his own interests and adversely to his principal. The exception, Professor Mechem concludes, rests upon the ground that because the agent is serving his own ends and purposes and not those of his principal there exists at that time no agency, rather than upon the ground that the law presumes that the agent will violate his duty, while the rule is confined to cases where there is agency or ratification. 2 Mechem on Agency (2d Ed.) § 1822.

Where the agent in serving his own ends commits a fraud his principal cannot be bound by his acts or declarations unless he had notice of them, or thereafter had notice of them and accepts or seeks to accept the fruits of his agent's fraud. This principle has found acceptance in several cases of undoubted authority in this jurisdiction. In *First National Bank* v. *New Milford,* 36 Conn. 93, Conklin, who was the treasurer of defendant town and cashier of plaintiff bank, took $3,000 from the bank for his own use and executed a note to the bank for this as treasurer of the town. He was then an embezzler from the bank. He had been allowed to make loans by the bank at his discretion. Neither the officials of the bank nor of the town knew of his embezzlements. The bank brought suit on the note. We said: "He as agent of the bank had full knowledge therefore of the fraud; and now the bank, if they ratify his contract and confirm his agency, must accept his knowledge and be bound by it, precisely as if the loan had been made and the knowledge had by the . . . directors."

In *Fairfield* v. *Southport National Bank,* 80 Conn. 92, 67 Atl. 471, the defendant's cashier, without its knowledge, embezzled from it, and to cover this stole some bonds from plaintiff, of which he was the treasurer, with which he in part reimbursed defendant. Upon discovery of the fraud plaintiff brought this action to recover the amount stolen from it by its treasurer. The defendant claimed that the cashier's knowledge of his own fraud could not be imputed to it. We held: "If the defendant disclaims the acceptance of Sherwood, cashier, on its behalf, of this payment as unauthorized, then it necessarily disclaims any acceptance, innocent or not, of moneys paid it in discharge of a debt due from Sherwood, thief, and is in that case bound in equity and in good conscience to pay over to

the plaintiff money thus obtained and retained by it. On the other hand, if the defendant, by retaining and using the money thus placed in its treasury, affirms the act of Sherwood, cashier, in accepting on its behalf the payment of a debt due to it, then it necessarily assumes the knowledge with which its agent on its behalf did the act thus adopted as its own. When an agent, acting in excess of his authority and without the knowledge of his principal, accepts on his principal's behalf money belonging to and fraudulently obtained from another with knowledge of the fraud, that principal, in treating this money as his own and retaining it as against the true owner, cannot claim as his own the act by which the money was accepted, without also admitting as his own the knowledge with which that act was done. He cannot receive the benefit of the fraud and reject the resulting duty. This rule is the outcome of an unquestionable rule of ethics, it expresses a truism fundamental to jurisprudence, which the court must apply as the occasion may arise."

In *McGurk* v. *Metropolitan Life Ins. Co.*, 56 Conn. 528, 540, 16 Atl. 263, we say: "These cases . . . fully establish the doctrine that knowledge affecting the rights of the insured, which comes to an agent of an insurance company while he is performing the duties of his agency in procuring applications for insurance and delivering policies and collecting premiums, becomes the knowledge of the company, and if the latter afterwards collects premiums of such parties it waives all objections with regard to matters of which it has such knowledge." See also *Clark* v. *Fuller*, 39 Conn. 238; *Trumbull* v. *Hewitt*, 65 Conn. 60, 31 Atl. 492; *American Surety Co.* v. *Pauly*, 170 U. S. 133, 18 Sup. Ct. 552; *Crocker* v. *United States*, 240 U. S. 74, 36 Sup. Ct. 245; *Curtis, Collins & Holbrook Co.* v. *United*

*States,* 262 U. S. 215, 43 Sup. Ct. 570; *Sunbury Fire Ins. Co.* v. *Humble,* 100 Pa. St. 495.

The plaintiff supports its contention that it is not required to disclose facts known to its agent but unknown to it when the agent gains the knowledge while acting in a manner antagonistic to it, by the citation of numerous authorities, none of which conflict with the principle upon which we rest this case. The limits of this opinion forbid analysis of these cases except in the three Connecticut cases which plaintiff mainly relies upon. *Watertown Savings Bank* v. *Mattoon,* 78 Conn. 388, 62 Atl. 622, presents the case of the defalcation of the treasurer of the plaintiff bank and the giving by him of a bond thereafter signed by himself and three sureties, upon which plaintiff brought suit against the principal and sureties. The answer alleged the failure of the directors of plantiff to ascertain the defalcation as they were in duty bound, and to make disclosure of it to the sureties. We held that there was no duty upon the bank or its directors to make such disclosure, that the bond was one required to be given by the treasurer, and not one which the directors were required to procure, and that the only duty upon them was to accept or reject it. The bank was not seeking to profit by the agent's fraud, nor ratifying his agency, nor seeking recovery under a contract made through the fraudulent concealment of facts material to the making of the contract.

In *Resnik* v. *Morganstern,* 100 Conn. 38, 122 Atl. 910, the agent was employed to obtain a contract for the sale of property. He did obtain a written contract for such sale but concealed this from his principal. The negotiations continued between the principals but were subsequently terminated and the consideration given in part payment for the purchase price returned. Later the prospective purchaser learned of the execution of

this contract and brought suit for its specific performance. The finding shows that the contract was not obtained by the agent through his fraud. The principal suing upon the contract is not ratifying any fraud of his agent for there was no fraud involved in the securing of the contract whose benefit the principal was entitled to and therefore the principal is not charged with the concealment of his agent. In the securing of this contract the agent did not act adversely to the interest of his principal, either for his own benefit or that of another, hence the presumption that the principal had knowledge of his conduct does not arise and the principal is not bound by his agent's act. *Hartford Distillery Co.* v. *New York, N. H. & H. R. Co.*, 97 Conn. 1, 115 Atl. 488, is distinguishable upon the same grounds. A salesman submitted fictitious orders for goods to his employer who filled the order for actual consignees and the goods were delivered to defendant carrier; the salesman accompanied the goods to the freight depot and took from the carrier nonnegotiable bills of lading to the consignee, and later obtained the goods by delivering to the carrier at the place of destination of the goods the bills of lading signed by him as agent for the consignee. The goods were shipped through the fraud of the agent upon his employer, but there was no fraud in the delivery to the carrier and its contract with the employer was not tainted with the fraud of the agent. The delivery of the goods to the agent was a fraud on the carrier accomplished for the purposes of the agent and not ratified by the employer. It was not chargeable with the knowledge of the agent of the fraud for his benefit; "the fraud," we say, "is not attributable to the plaintiff, which stands in the position of an owner who has been misled by its own agent into shipping the goods to consignees who did not order them."

686

The plaintiff cites at length, from the opinion of Mr. Justice Blackburn in *Smith* v. *Hughes*, L. R. 6 Q. B. 597, at page 607, and from *American Surety Co.* v. *Pauly*, 170 U. S. 133, 18 Sup. Ct. 552. Each of these cases recognizes the exception that the general rule of the nonaccountability of a principal for the concealment of his agent while acting adversely to the principal is applicable, "unless the principal afterwards ratifies the contract with knowledge of the agent's conduct." The agent of the plaintiff by the fraudulent concealment of facts material to the risk involved in the issuance of the policy, procured the policy of insurance from the defendant who had no knowledge of the facts. In its action upon the contract of insurance the plaintiff cannot recover through the fraud of its agent. One who claims through a contract procured by the fraud of its agent is in precisely the same legal situation as if it had itself procured the contract through a like fraud.

There is no error.

In this opinion the other judges concurred.