**Julien PINETTE and Norma Pinette,
Plaintiffs–Appellants**

v.

**ASSURANCE COMPANY OF AMERICA,
Defendant–Appellee.**

No. 739, Docket 94–7622.

United States Court of Appeals,
Second Circuit.

Argued Nov. 16, 1994.

Decided April 7, 1995.

David S. Grossman, Brookfield, CT, for plaintiffs-appellants.

Linda L. Morkan, Robinson & Cole, Hartford, CT, for defendant-appellee.

Before: OAKES, ALTIMARI, and WALKER, Circuit Judges.

WALKER, Circuit Judge:

Julien and Norma Pinette (the "Pinettes") brought this diversity action against Assurance Company of America ("Assurance") seeking payment under a homeowners insurance policy after their house was completely destroyed by fire. Plaintiffs appeal from an order of the United States District Court for the District of Connecticut (Alfred V. Covello, *Judge*) granting summary judgment on the defendant's counterclaim for rescission of the policy due to plaintiffs' material misrepresentation in the insurance application as to their prior loss history. On appeal, plaintiffs contend that they did not make a misrepresentation since the insurance agent filled in the information regarding loss history and Julien Pinette signed the application without reading it; that any misrepresentation they may have made was not material as a matter of law; and, finally, that because any misrepresentation was made not to defendant but to defendant's parent corporation, it cannot be used by defendant to avoid the contract.

For the reasons that follow, we affirm the judgment of the district court.

## BACKGROUND

In early August, 1990, plaintiff Julien Pinette contacted Stephen Cooper, an insurance agent with North American Underwriters of Bloomfield, Connecticut, to obtain fire

insurance for the Pinettes' residence. During the telephone conversation, Cooper asked for and received from Pinette much of the information necessary to prepare the application.

On August 10, 1990, Pinette and Cooper met in Cooper's office and discussed the policy further. Cooper then presented Pinette with a completed application and asked him to sign it. In the space marked "Company/Plan," Cooper had written "Maryland Casualty/Pref," referring to a policy with preferred rates offered by the Maryland Casualty Company ("Maryland Casualty"). Pinette signed the application and gave Cooper a check made out to Maryland Casualty for the first year's premium.

The application filled out by Cooper and signed by Pinette contained two incorrect responses. In the section labelled "loss history" the word "none" was written. In fact, the home that the Pinettes were seeking to insure had been rebuilt after it had been destroyed by fire in May of 1988. In response to question 9, which asked if "[a]ny insurance [had been] declined, cancelled, or non-renewed" in the last three years, the box below the answer "no" was marked. In July of 1990, however, a previous insurance policy of the Pinettes had been cancelled on the ground that their loss history prevented them from meeting that company's underwriting standards.

Shortly thereafter, Pinette received a copy of the policy, which covered the period from August 25, 1990 through August 25, 1991. The policy was issued by the defendant Assurance, a wholly owned subsidiary of Maryland Casualty.

On December 27, 1990, the Pinettes' home was again completely destroyed by fire. A few days later, Maryland Casualty advanced the Pinettes $20,000 for emergency living expenses. It denied further coverage for the fire, however, on the ground that the two incorrect answers on the Pinettes' application constituted material misrepresentations that rendered the contract voidable.

Plaintiffs initially sued Maryland Casualty in Connecticut Superior Court on October 29, 1991. Maryland Casualty later removed the case to the United States District Court for the District of Connecticut and substituted its subsidiary, Assurance, as the proper defendant. In its answer, Assurance counterclaimed for rescission based on plaintiffs' material misrepresentations. Thereafter both sides moved for summary judgment. On April 13, 1994, the district court denied plaintiffs' motion for summary judgment and granted summary judgment in favor of defendant. Plaintiffs appealed.

## DISCUSSION

■ Under Connecticut law, an insurance policy may be voided by the insurer if the applicant made "[m]aterial representations ..., relied on by the company, which were untrue and known by the assured to be untrue when made." *State Bank & Trust Co. v. Connecticut Gen. Life Ins. Co.*, 109 Conn. 67, 72, 145 A. 565, 567 (1929). To prevail on its defense, Assurance must therefore prove three elements: (1) a misrepresentation (or untrue statement) by the plaintiff which was (2) knowingly made and (3) material to defendant's decision whether to insure.

Plaintiffs raise three principal arguments on appeal: first, that because the insurance agent put the incorrect information in the application without plaintiffs' knowledge, plaintiffs did not make a "knowing" misrepresentation; second, that any misrepresentations made were not material; and finally, that Assurance cannot obtain rescission for a material misrepresentation made to its parent, Maryland Casualty. If any of these arguments raises a genuine issue of material fact, summary judgment for defendant should not have been granted. *See* Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). We address each contention in turn.

### I. "Knowing Misrepresentation"

■ For a material misrepresentation to render a contract voidable under Connecticut law, the misrepresenting party must know that he is making a false statement. "Innocent" misrepresentations—those made because of ignorance, mistake, or negligence—

are not sufficient grounds for rescission. *See Middlesex Mut. Assurance Co. v. Walsh,* 218 Conn. 681, 691–92, 590 A.2d 957, 963 (1991). According to plaintiffs' version of the events, Julien Pinette informed the insurance agent about the previous loss of their residence during their initial phone conversation in early August, 1990. Cooper then filled in the incorrect information on his own, and Julien Pinette failed to detect the error because he neglected to read the application before signing it. Under these circumstances, the Pinettes contend, there is at least a genuine issue of material fact as to whether the misrepresentations were innocent rather than knowing.

When Connecticut courts speak of "innocent" misrepresentations, they generally have in mind the situation in which the applicant does not know that the information he is providing is false. *See, e.g., Middlesex Mut.,* 218 Conn. at 692, 590 A.2d at 963–64 ("[I]n order to constitute a misrepresentation sufficient to defeat recovery on an automobile insurance policy, a material representation on an application for such a policy must be known by the insured to be false when made."); *Lazar v. Metropolitan Life Ins. Co.,* 290 F.Supp. 179, 181 (D.Conn.1968) (finding an applicant's misrepresentations on an application not "knowing" as a matter of law where the agent stated that the false answers were not within the scope of the question). Plaintiffs raise a different point: they argue that, even though they knew the information to be false, they did not knowingly represent it to the defendant.

■ Under Connecticut law, however, a person may not claim that a misrepresentation is "innocent" solely because the person failed to read the application before signing it. "The law requires that the insured shall not only, in good faith, answer all the interrogatories correctly, but shall use reasonable diligence to see that the answers are correctly written." *Ryan v. World Mut. Life Ins. Co.,* 41 Conn. 168, 172 (1874) (holding the defendant not to be liable under an insurance policy when plaintiff claimed that she gave defendant's agent the right information but he recorded the wrong answer). Thus, at least in Connecticut, an applicant for insurance has the affirmative duty "to inform himself of the content of the application signed by him, under penalty of being bound by the representations as recorded therein." 7 George J. Couch, Cyclopedia of Insurance Law § 35:231, at 358 (2d ed. 1985) [hereinafter Cyclopedia of Insurance Law] (citing *Ryan* ).

This rule was followed in *Kelly v. John Hancock Mutual Life Ins. Co.,* 131 Conn. 106, 38 A.2d 176 (1944). In *Kelly,* the plaintiff's mother applied for life insurance and signed an application stating that she was in sound health. The plaintiff conceded the statement's falsity, but claimed that the agent had completed the application and that her mother had signed it without reading it. The court permitted the fraudulent misrepresentation defense, stating that "[u]nder these circumstances the assured was under a duty to know the contents of the application signed by her. Failure to do so was inexcusable negligence." 131 Conn. at 110, 38 A.2d at 177. In *Bahr v. Prudential Ins. Co.,* 5 Conn.Cir.Ct. 620, 624–28, 260 A.2d 422, 424–26 (1969), the court upheld a judgment setting aside a verdict in favor of the plaintiff where the plaintiff failed to read the application before signing it even though the plaintiff could not speak or read English.

■ There is an exception to this rule in Connecticut if the insurance agent induces the applicant to sign the application without reading it. *See Lewis v. John Hancock Mut. Life Ins. Co.,* 443 F.Supp. 217, 219 (D.Conn. 1977) ("If through the conduct of defendant's agent, [plaintiff] failed to read over the questions and answers in the applications, he would in effect have made no misrepresentations at all. . . ."). In order to avail themselves of this exception, however, the Pinettes must offer some evidence that Cooper actively encouraged Julien Pinette to sign the application without reviewing the answers. *See Kelly,* 131 Conn. at 110, 38 A.2d at 177 (without evidence of "fraud or misrepresentation on the part of the agent," the applicant was charged with knowledge of the contents of the signed application). That Pinette supplied the correct information to the agent, who then wrote down the wrong answer, is insufficient standing alone to re-

lieve plaintiffs of responsibility for the misrepresentation. *See Bahr*, 5 Conn.Cir.Ct. at 627–28, 260 A.2d at 426; *Ryan*, 41 Conn. at 171–72.

The record in this case is bare of any allegations of active inducement on the part of Cooper. In fact, plaintiffs admit that Julien Pinette's failure to review the application was due to his own "carelessness." Under these circumstances, the district court correctly held that plaintiffs made a knowing misrepresentation as to their loss history.

## II. Materiality

Plaintiffs next contend that the district court erred in finding their misrepresentations material because Assurance has not shown that it would have denied them coverage had it known of their prior loss history. We disagree.

■ Under Connecticut law, a misrepresentation is material "when, in the judgment of reasonably careful and intelligent persons, it would so increase the degree or character of the risk of the insurance as to substantially influence its issuance, or substantially affect the rate of premium." *Davis Scofield Co. v. Agricultural Ins. Co.*, 109 Conn. 673, 678, 145 A. 38, 40 (1929); *see also Pacific Indem. Co. v. Golden*, 985 F.2d 51, 56 (2d Cir.1993).

■ Common sense tells us that an applicant's prior loss history is material to a reasonable insurance company's decision whether to insure that applicant or determination of the premium. Connecticut courts have evaluated similar misrepresentations and found them material as a matter of Connecticut law. *See, e.g., Lazar*, 290 F.Supp. at 180 ("Under Connecticut law, a misrepresentation in the application for life or health insurance concerning the applicant's prior medical history is material to the risk as a matter of law....." (footnote omitted)). Furthermore, Connecticut caselaw strongly suggests that an answer to a question on an insurance application is presumptively material. *See State Bank & Trust*, 109 Conn. at 70, 145 A. at 566 (Where a misrepresentation is in answer to a question on an application, inquiry and answer are tantamount to agreement

that the matter is material.); *see also* Cyclopedia of Insurance Law § 35:140, at 237 & n. 2 (citing *State Bank & Trust*). Thus, in addition to the character of the information misrepresented, the fact that the application in this case specifically requested the information supports the district court's finding of materiality.

Assurance also submitted ample evidence that loss history plays a critical role in its own decision whether to provide insurance. The guidelines for its preferred policy state that an applicant that has suffered any loss within the previous three years (aside from one "Act of Nature" loss) should be denied coverage. In addition, Maryland Casualty's Underwriting Manager submitted an affidavit stating that Assurance would have turned the plaintiffs down had they known of the earlier fire loss. This uncontradicted evidence further confirms our conclusion that the district court's finding of materiality was not erroneous.

## III. To Whom the Misrepresentation Was Made

The Pinette's final argument on appeal is that Assurance may not rescind the contract on the basis of material misrepresentations made to Maryland Casualty. We agree with the district court that this contention lacks merit.

■ The cases cited by plaintiffs do not hold, as they claim, that a wholly owned subsidiary that carries an insurance policy on behalf of its parent may not object to an applicant's material misrepresentations made to the parent. Rather, the cases simply stand for the proposition that an applicant is not responsible for misstatements unless and until he adopts or endorses the particular application containing them. *See Bristol v. Commercial Union Life Ins. Co.*, 211 Conn. 622, 629, 560 A.2d 460, 464 (1989); *Cleavenger v. Franklin Fire Ins. Co.*, 47 W.Va. 595, 35 S.E. 998 (1900). In this case, it is clear that Julien Pinette, by signing the application in question, endorsed the misrepresentations it contained.

The Pinettes' application was signed by Julien Pinette and then, without alteration,

submitted for Maryland Casualty's Preferred policy as the Pinettes intended. That as a matter of internal corporate operations it was the wholly owned subsidiary Assurance rather than Maryland Casualty that issued the preferred policy did not alter either the application or plaintiffs' endorsement of it. As the district court pointed out, the plaintiffs received the exact policy for which they applied. We find no reason in this context to bar Assurance from claiming rescission due to plaintiffs' material misrepresentations.

## CONCLUSION

Because plaintiffs have failed to demonstrate a genuine issue of material fact sufficient to defeat defendant's counterclaim for rescission based on material misrepresentation, the judgment of the district court is affirmed.