[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum Filed July 10, 1997
On May 14, 1996, the plaintiff, The Paul Revere Life Insurance Co., filed a two count complaint against the defendant, CT Page 12514 Janis Pastena. The plaintiff alleges the following facts. On or about February 18, 1994, the defendant applied for a disability income insurance policy with the plaintiff. In completing the application, the defendant indicated that she was presently covered under a disability insurance policy through the American College of Physicians and Surgeons (the "ACS policy"), but indicated in the application that the ACS policy would be discontinued. effective March 18, 1994. Additionally, Item 2 of the signature page, signed by the defendant, also states that any existing policy was to be discontinued.
On May 9, 1994, the plaintiff, based upon the defendant's representations in the application that she would discontinue her ACS policy, issued the defendant a disability income insurance policy (the "Revere policy"). On July 14, 1994, and on various dates thereafter, the plaintiff notified the defendant that it had learned that the ACS policy was still in effect and requested her to discontinue that policy. On April 12, 1996, after learning the defendant's ACS policy was still in force, the plaintiff sent the defendant a letter informing her that in light of her failure to discontinue the ACS policy, the Revere policy was rescinded and enclosed a check for $6,977.19 as a refund of premiums paid. The defendant returned that check to the plaintiff, whereupon this lawsuit commenced.
The first count of the plaintiff's complaint seeks rescission of the Revere policy due to the defendant's alleged material misrepresentations made on her policy application. The second count seeks rescission based upon the defendant's alleged breach of the policy's terms. On September 27, 1996, Pastena filed an amended answer and two special defenses. The first defense is that there is no legal basis in the contract for the plaintiff to seek attorneys fees. The second defense is that the plaintiff, through its actions and representations made subsequent to August 24, 1995, is legally barred from seeking rescission of the insurance policy. On February 4, 1997, the plaintiff filed a motion for summary judgment as to the entire complaint, on the ground that no issues of material fact are in dispute, entitling it to judgment as a matter of law. In support of its motion, the plaintiff filed a memorandum of law, an affidavit and other supporting documentation. On March 14, 1997 the defendant filed a memorandum in opposition to the plaintiff's motion for summary judgment, attaching her own affidavit and various exhibits.
"Practice Book § 384 provides that summary judgment shall CT Page 12515 be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to judgment as a matter of law . . . and that a party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of such a genuine issue of material fact. Practice Book § 381." (Citations omitted: internal quotation marks omitted.)Thompson Peck, Inc. v. Division Drywall, Inc.,241 Conn. 370, 374 (1997). "The test is whether a party would be entitled to a directed verdict on the same facts." Bank ofBoston v. Scott Real Estate, Inc., 40 Conn. App. 616, 620,673 A.2d 558, cert. denied, 237 Conn. 912, 675 A.2d 884 (1996).
The plaintiff claims that it is undisputed that the defendant, in filling out an application for disability insurance with Paul Revere, promised to allow an existing disability insurance policy with another company to lapse. The plaintiff argues that is also undisputed that the defendant failed to fulfill this promise. According to the plaintiff, these actions of the defendant constitute material misrepresentations on the application, allowing the defendant to void the policy. Alternatively, the plaintiff contends that these actions constitute a failure of consideration and a material breach of the disability insurance policy, justifying rescission.
The defendant sets forth five reasons to deny plaintiffs motion for summary judgment. First, the defendant claims that the plaintiff is inappropriately asking the court to draw inferences as to the parties' motives and intentions. Second, that the affidavit submitted in support of the plaintiff's motion is improper, as it is not based upon the affiant's personal knowledge. Third, that the equitable remedy of rescission is inappropriate for summary judgment. Fourth, that the defendant's own affidavit adequately demonstrates the existence of genuine issues of material fact and fifth, that there are numerous questions of fact raised by the defendant's two special defenses that preclude summary adjudication of this case.
"An insurance policy is to be interpreted by the same general CT Page 12516 rules that govern the construction of any written contract and enforced in accordance with the real intent of the parties as expressed in the language employed in the policy." Stephan v.Pennsylvania General Ins. Co., 224 Conn. 758, 763,621 A.2d 258 (1993). "The policy words must be accorded their natural and ordinary meaning." Id. Any ambiguity in the terms of an insurance policy must be construed in favor of the insured, but this rule of construction "may be not applied, however, unless the policy terms are indeed ambiguous." Id.
"Under Connecticut law, an insurance policy may be voided by the insurer if the applicant made `[m]aterial representations . . . , relied on by the company, which were untrue and known by the assured to be untrue when made."Pinette v. Assurance Co. of America, 52 F.3d 407, 409
(2d Cir. 1995) quoting State Bank Trust Co. v. ConnecticutGeneral Life Ins. Co., 109 Conn. 67, 72, 145 A. 565 (1929); see also Mt. Airy Ins. Co. v. Millstein, 928 F. Sup. 171,174 (D.Conn. 1996). "[T]he party seeking to rescind need not demonstrate that the other party's misrepresentations were made intentionally, provided that they are material to the contract."Munroe v. Great American Ins. Co., 234 Conn. 182, 188
n. 4, 661 A.2d 581 (1995). "If it were necessary to prove an intent to deceive, such intent would be inferred from the making of the false representations with knowledge that they were false." State Bank Trust Co. v. Connecticut General LifeIns. Co., supra, 109 Conn. 73.
"For a material misrepresentation to render a contract voidable under Connecticut law, the misrepresenting party must know he is making a false statement. Innocent misrepresentations — those made because of ignorance, mistake, or negligence — are not sufficient grounds for rescission." (Internal quotation marks omitted.) Pinette v. Assurance Co. of America, supra, 52 F.3d 409-10, citing Middlesex Mutual Assurance Co. v.Walsh, 218 Conn. 681. 691-92, 590 A.2d 957, 963 (1991). "[S]ince an insured makes a knowing misrepresentation only when he submits an answer to a question in the application other than that which he has reason to believe is true, . . . it follows that an insured should not be held responsible for an answer in the application if he was justifiably unaware of its falsity, had no actual or implied knowledge of its existence, and was not guilty of bad faith, fraud, or collusion." (Citation omitted; internal quotation marks omitted.) Middlesex Mutual AssuranceCo. v. Walsh, supra, 218 Conn. 698. CT Page 12517
In her affidavit, the defendant states that, contrary to the signed insurance policy, she never promised the plaintiff that she would discontinue her disability policy with ACS, but rather, would inquire about modifying her coverage. The defendant avers that the agent who filled out the application wrote, without her knowledge, that the ACS policy would be discontinued. (Pastena affidavit, p. 5, ¶ 17). In a letter dated March 7, 1996, from the defendant to the president of Paul Revere, the defendant explains this apparent contradiction as follows: "I never agreed to drop the [ACS policy] . . . On the original application written by Mr. Friedman, I have subsequently discovered that he had written in this application that I would be discontinuing the ACS coverage. Trusting the agent, apparently. I did not see or examine this carefully." (Defendant's Exhibit 15, p. 1.)
A person may not claim that a misrepresentation is "innocent" solely because the person failed to read the application before signing it. "The law requires that the insured shall not only, in good faith, answer all the interrogatories correctly, but shall use reasonable diligence to see that the answers are correctly written. It is for his best interest to do so, and the insurer has a right to presume that he will do it." Ryan v. WorldMutual Life Ins. Co., 41 Conn. 168, 172 (1874) (holding the defendant insurance company not to be liable under a policy when the plaintiff claimed that she gave defendant's agent the right information but who recorded the wrong answer); see also Mt.Airy Ins. Co. v. Millstein, supra, 928 F. Sup. 175. "Thus, at least in Connecticut, an applicant for insurance has the affirmative duty to inform himself of the content of the application signed by him, under penalty of being bound by the representations as recorded therein." (Internal quotation marks omitted.) Pinette v. Assurance Co. of America, supra, 52 F.3d 410; Kelly v. John Hancock Mutual Life Ins. Co.,131 Conn. 106, 110, 38 A.2d 176 (1944); Ryan v. World MutualLife Ins. Co., supra, 41 Conn. 172.
Therefore, the defendant's failure to read or examine carefully the application does not preclude a finding that her misrepresentation was knowing.[1]
"[A] misrepresentation is material `when, in the judgment of reasonably careful and intelligent persons, it would so increase the degree or character of the risk of the insurance as to substantially influence its issuance, or substantially affect the CT Page 12518 rate of premium.'" Pinette v. Assurance Co. of America,supra, 52 F.3d 411, quoting Davis-Scofield Co. v.Agricultural Ins. Co., 109 Conn. 673, 678. 145 A. 38, 40
(1929). Ordinarily, "[w]here the materiality of a representation depends upon inferences drawn from facts and circumstances proved, the question is one for the jury." State Bank TrustCo. v. Connecticut General Life Ins. Co., supra,109 Conn. 70; see also Borden v. Paul Revere Life Ins. Co.,935 F.2d 370 (1st Cir. 1991); Paul Revere Life Ins. Co. v.Fish, 910 F. Sup. 58 (D.R.I. 1996); 7 G. Couch, Insurance (2d Ed. 1985) § 35:93, p. 152. However, "[w]here the representation is contained in an answer to a question contained in the application which is made part of the policy the inquiry and answer are tantamount to an agreement that the matter inquired about is material. The information given forms the basis of the contract and defines the risk assumed." State Bank Trust Co. v. Connecticut General Life Ins. Co., supra,109 Conn. 70.
"The test of materiality is in the effect which the knowledge of the fact in question would have on the making of the contract. To be material, a fact need not increase the risk, or contribute to any loss or damage suffered. It is sufficient if the knowledge of it would influence the parties in making the contract . . .Matters made the subject of special inquiry are deemedconclusively material." (Emphasis added; internal quotation marks omitted.) Id., 70-71: see also Guariglia v.John Hancock Mutual Life Ins. Co., 139 Conn. 54, 57.90 A.2d 162 (1952); Mt. Airy Ins. Co. v. Millstein, supra,928 F. Sup. 176.
In State Bank Trust Co. v. Connecticut General LifeIns. Co., supra, 109 Conn. 70., the court found "beyond question" that misrepresentations regarding prior medical history made by an insured in an application for insurance material as a matter of law. In the context of a disability income insurance policy, courts in other jurisdictions have held that an applicant's misrepresentation concerning existing disability coverage is material because it affects whether the insurer will issue the policy or in fixing the appropriate premium.Manzella v. Paul Revere Life Ins. Co., 872 F.2d 96, 99
(5th Cir. 1989): Breault v. Berkshire Life Ins. Co.,821 F. Sup. 410, 414 (E.D. Va. 1993). "Information concerning an applicant's disability coverage is clearly material to an insurer's decision to issue a disability policy, because it bears CT Page 12519 on the possibility that the applicant, if overinsured, might feign a disabling illness or seek to avoid returning to work after a legitimate injury." Breault v. Berkshire Life Ins.Co., supra, 821 F. Sup. 414.
In Paul Revere Life Ins. Co. v. Dietz, 785 F. Sup. 970,973 (M.D. Fla. 1992), the court, in interpreting a seemingly identical policy and application to the one in the present case, granted the plaintiff insurance company's motion for summary judgment. That court found it clear from the "four corners" of the policy that cancellation of other disability insurance policies was an express condition of that policy, and that the insured's failure to terminate existing disability policies was a failure of consideration, justifying rescission of the policy.Id. That court also deemed important the affidavit of an underwriter of the plaintiff, indicating that the plaintiff insurance company would not have entered into that policy agreement without the defendant's promise to cancel.Id.[2]
In the present action, both parties aver that the plaintiff's Exhibit A-1 is a true and accurate copy of the disability policy at issue, and is an accurate copy of the application for that policy. Part F of the Revere policy application expressly states that the application itself is incorporated as part of the policy agreement. Also within Part F, the defendant indicated that the ACS policy would be discontinued, effective March 15, 1994. On the application's signature page, Item 2 states: "I will discontinue any policy(ies) shown to be discontinued in answer to questions F-1 and I-1 of Part 1 on or before the date(s) indicated. The Company will rely on such answers in determining the amount, if any, of insurance it will issue." Underneath Item 2 is the defendant's signature, dated February 18, 1994.[3] The record also establishes, through the affidavit of Revere underwriter Kenneth Couture, that had Revere been aware the Pastena's ACS policies would continue, the plaintiff would not have issued its policy to Pastena.
The court finds as a matter of law that the defendant made material misrepresentations in her application for disability income insurance with the defendant or, alternatively, that the defendant materially breached the terms of the policy.
The final issue is whether, under the circumstances of this case, rescission is an appropriate remedy. "Rescission, simply CT Page 12520 stated, is the unmaking of a contract. It is a renouncement of the contract and any property obtained pursuant to the contract, and places the parties, as nearly as possible, in the same situation as existed just prior to the execution of the contract." Kavarco v. T.J.E., Inc., 2 Conn. App. 294,299, 478 A.2d 257 (1984).
The remedy of rescission does not need to be expressly stated in an agreement. Keyes v. Brown, 155 Conn. 469, 475,232 A.2d 486 (1967). An award of rescission is justified "if there has been a material misrepresentation of fact upon which a party relied and which caused it to enter the contract." Kavarco v.T.J.E., Inc., supra, 2 Conn. App. 298; State v. HartfordAccident Indemnity Co., 136 Conn. 157, 167, 70 A.2d 109
(1949). "If the misrepresentations went to the root of the contract, the plaintiff had a right to rescind it, because it was induced by a material misrepresentation . . ." E.FConstruction Co. v. Stamford, 114 Conn. 250, 258, 158 A. 551
(1932).
Prior to bargaining with the plaintiff, the defendant had as disability insurance the ACS policy, providing the defendant $12,500 in coverage in the event of disability. According to the defendant's answers to the plaintiffs requests for admissions, dated December 19, 1996, the ACS policy was still in effect, for the same amount of coverage when the plaintiff attempted to rescind the Revere policy. Therefore, the court finds the remedy of rescission available, as the parties may be returned to their original condition.
The defendant claims that through her special defenses, she has sufficiently raised the issues of reliance and waiver which themselves raise material questions of fact, precluding the remedy of rescission. This argument is unpersuasive. The defendant's arguments rely solely upon correspondence dated August 24, 1995, between the defendant and Paul Revere general manager Warner H. Arthur. (Defendant's Exhibit 12.) That correspondence, in relevant part, states as follows:
 As per our telephone conversation, please send to me [a] copy of benefits pages from American College of Physicians and Surgeons, and any other disability you may have except Paul Revere i.e., your new Hospital were [sic] you work. CT Page 12521
 I feel that with this last bit of information, I can settle the Paul Revere underwriters['] concern regarding over insurance.
"Waiver is the intentional relinquishment of a known right." (Internal quotation marks omitted.) Majernicek v. HartfordCasualty Ins. Co., 240 Conn. 86, 96, 688 A.2d 1330 (1997). While waiver may be inferred from the circumstances if it is reasonable to do so, "[i]ntention to relinquish must appear."Novella u. Hartford Accident Indemnity Co.,163 Conn. 552, 562, 316 A.2d 394 (1972). As a matter of law, it is not reasonable to infer from this correspondence that the plaintiff insurance company intentionally relinquished its right to seek rescission of the Revere policy.
In pleading reliance, the defendant is also attempting to raise an estoppel claim.[4] The defendant claims that a genuine issue of material fact exists as to her reliance upon the August 24, 1995 correspondence. "Under Connecticut law, any claim of estoppel is predicated on proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another to believe certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury." (Internal quotation marks omitted.) Middlesex MutualAssurance Co. v. Walsh, supra, 218 Conn. 699.
The defendant claims to have relied on the correspondence to her detriment by taking steps to reduce her benefits under the ACS policy. Yet both in this special defense and in her affidavit, the defendant concedes to never having reduced such benefits. Therefore, as the defendant has offered no evidence indicating detrimental reliance, she has failed to provide the requisite evidentiary foundation demonstrating the existence of a genuine issue of material fact.
Accordingly, for the reasons herein stated, the court finds that the defendant made material misrepresentations on her disability insurance application, and that the remedy of rescission is appropriate. The court grants summary judgment in favor of the plaintiff.
Gill, J.