WESTPORT INSURANCE
CORPORATION,
Plaintiff,

v.

Stephen T. GIONFRIDDO, Frank Co-
longhi, David P. Gionfriddo, Sebastian
T. Gionfriddo, Karen H. Grenier, Food
Imports of Middletown, Inc., John
Carta, Linda Carta, Lucretia Howell,
Kathleen Manuel, Joseph A. Messina,
Connecticut Attorneys Title Insurance
Co., Margaret Radman, Nellie Walker,
and Lawyers Title Insurance Compa-
ny, Defendants.

Civ. No. 3:06CV00462(AWT).

United States District Court,
D. Connecticut.

Dec. 17, 2007.

Louis B. Blumenfeld, Cooney, Scully & Dowling, Hartford, CT, for Plaintiff.

Loo Pacacha–Grotz, Middletown, CT, Joseph Edwin Prokop, Kutz & Prokop LLP, Portland, CT, J. Anthony Doran, Butler, Norris & Gold, Gerald L. Garlick, Krasow, Garlick & Hadley, Hartford, CT, Robert Joseph Piscitelli, The Law Offices of Robert M. Meyers LLC, Avon, CT, for Defendants.

Lucretia Howell, Middletown, CT, pro se.

### RULING ON MOTION FOR SUMMARY JUDGMENT

ALVIN W. THOMPSON, District Judge.

Plaintiff Westport Insurance Corporation ("Westport") brought this action seeking a declaratory judgment that the liability insurance policy issued to Attorney Stephen T. Gionfriddo ("Gionfriddo"), effective from July 28, 2005 to September 22, 2005, is void *ab initio*. On May 21, 2007, default judgment was entered in favor of Westport against defendants Gionfriddo, Food Imports of Middletown Inc., John Carta, Linda Carta, Karen H. Grenier, and Nellie Walker. Westport has moved for summary judgment with respect to the remaining defendants, i.e. Frank Colonghi, David P. Gionfriddo, Sebastian T. Gionfriddo, Lucretia Howell, Kathleen Manuel, Joseph Messina, Connecticut Attorneys Title Insurance Company, and Margaret Radman. Defendants Kathleen Manuel ("Manuel") and Joseph Messina ("Messina") have filed objections

to the motion. For the reasons set forth below, the plaintiff's motion for summary judgment is being granted.

## I. FACTUAL BACKGROUND

### A. The Insurance Policy

Westport issued a claims made and re-ported lawyers professional liability and title insurance agent liability policy, no. WLW307004395000, to Gionfriddo. The policy became effective on July 28, 2005. It was cancelled on September 22, 2005 for non-payment. The endorsement for the lawyers professional liability coverage unit reads in pertinent part:

> The Company shall pay on behalf of any INSURED all LOSS in excess of the deductible which any INSURED be-comes legally obligated to pay as a re-sult of CLAIMS first made against any INSURED during the POLICY PERI-OD and reported to the Company in writing during the POLICY PERIOD or within sixty (60) days thereafter, by rea-son of any WRONGFUL ACT occurring on or after the RETROACTIVE DATE, if any ...

(Doc. No. 1, Complaint, Ex. A at 12). That endorsement also contains a reporting and notice provision, which reads in pertinent part:

> As a condition precedent to coverage under this Coverage Unit, if a CLAIM is made against any INSURED, or if any INSURED becomes aware of any CLAIM, the INSURED(S) shall, as soon as practicable, but no later than sixty (60) days after termination of the POLICY PERIOD, provide written no-tice to the Company.

(Id. at 13). The endorsement for the title insurance coverage unit contains the same two clauses.

The policy explicitly excludes from cov-erage any claim resulting from "any act,

error, omission, circumstance or PER-SONAL INJURY occurring prior to the effective date of this POLICY if any IN-SURED at the effective date knew or could have reasonably foreseen that such act, error, omission, circumstance or PER-SONAL INJURY might be the basis of a CLAIM." (Id. at 8). A section entitled "Entire Agreement" reads in pertinent part:

> By acceptance of this POLICY, all IN-SUREDS reaffirm as of the effective date of this POLICY, that (a) the statements in the application(s) and all information communicated by the IN-SUREDS to the Company and all IN-SUREDS' agreements and representa-tions are true and accurate (b) this POLICY is issued in reliance upon the truth and accuracy of such representa-tions which are material to the Compa-ny's issuance of this POLICY and (c) this POLICY embodies all agreements between all INSUREDS and the Com-pany or any of its agents relating to this insurance ...

(Id. at 11).

On April 25, 2005, Gionfriddo completed his Application for Small Law Firms. On the application, Gionfriddo was asked the following question on more than one occa-sion:

> After inquiry of each lawyer, is the Ap-plicant, its predecessor firms or any law-yer proposed for this insurance aware of any fact or circumstance, act, error, omission, or personal injury which might be expected to be the basis of a claim or suit for lawyers or title agents profes-sional liability?

(Doc. No. 1, Ex. B at 3, 9). Gionfriddo answered "no" to this question each time it was asked. Based on the application, Westport issued the insurance policy to Gionfriddo.

## B. Gionfriddo's Misconduct

On June 22, 2006, Gionfriddo pled guilty to a Two–Count Information charging him with wire fraud in violation of 18 U.S.C. § 1343 and mail fraud in violation of 18 U.S.C. 1341. The Information alleged:

From in or about January 1, 2000 through on or about July 2005, defendant STEPHEN T. GIONFRIDDO, in the District of Connecticut and elsewhere, devised and intended to devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises, that is defendant STEPHEN T. GIONFRIDDO began to use improperly client funds totaling approximately $638,138 to cover his mounting financial debts and borrowed, based on misrepresentations, money totaling approximately $209,500 from friends and family members in order to conceal and continue the fraud.

See United States v. Gionfriddo, No. 3:06–CR–00188(CFD)(Doc. No.1, Information, ¶ 6). In a plea agreement entered into with the government, Gionfriddo stipulated to the following offense conduct:

In order to cover the mounting expenses related to his gambling, the defendant began to steal client funds. The defendant used various schemes to obtain the money. The following are illustrations of the manner and means by which defendant perpetrated the fraud: Gionfriddo represented various clients in connection with real estate closings and rather than use the client's money to pay off the mortgage as represented, he assumed the monthly payments and used the money to cover his personal financial debts. In addition, rather than pay out monies to clients as a result of a settlement, Gionfriddo would misrepresent the status of a case and use the moneys to cover his personal expenses. Gionfriddo also took money from clients to settle claims and rather than use the money to resolve the case as promised, he stole the money to cover personal financial debts. It is the government's position that, as a result of the fraud, Gionfriddo embezzled $638,138.00 in client funds. The defendant disputes this amount but agrees that the amount of the fraud is greater than $400,000 and less than $1,000,000.

(Id., Doc. No. 5, Plea Agreement at 8–9). In a sentencing memorandum filed on October 11, 2006, Gionfriddo, through counsel, states:

Without going into great detail, as the facts are reported in the presentence report, from 2001 through mid 2005, the gambling losses added up to an amount far beyond Mr. Gionfriddo's ability to repay. The theft of money from his client's fund was used in one way or the other in supporting his gambling addition. In June of 2005, it all came crashing down.

(Id., Doc. No. 18, Sentencing Memorandum of Stephen Gionfriddo at 2). On November 29, 2006, Gionfriddo was sentenced to a term of imprisonment for a total of 30 months on each count of conviction, to be served concurrently. (Id., Doc. No. 24, Judgment at 1). He was also ordered to pay restitution to his client-victims in the amount of $663,943.00.[1]

During the two months that the insurance policy was effective and the following sixty day extended reporting period, twen-

---

1. The Connecticut Attorneys Title Insurance Company (which covered the defendant's failure to pay off the Carta Liens) and the Lawyer's Title Insurance Company (which covered the defendant's failure to pay off the Grenier Liens) are named defendants in the instant case.

ty-two lawsuits and grievances were brought against Gionfriddo. These actions, filed by the claimant-defendants in this suit and many others, alleged that Gionfriddo converted and/or appropriated funds in his representation of clients and engaged in other forms of legal malpractice. The alleged acts of malpractice occurred prior to Gionfriddo's execution of his application for insurance on which he represented that he was unaware of any "basis of a claim or suit for lawyers or title agents professional liability."

If Westport had been aware of the existence of a basis for numerous claims against Gionfriddo, it would not have issued the policy. Stephen Lang, an underwriter in the Professional Liability Division of Westport, avers:

10. Gionfriddo's misrepresentation materially affected the risk and the hazard assumed by Westport.

11. Westport reasonably relied upon the truthfulness of answers on the Application in order to determine Westport's risk.

12. Had Gionfriddo accurately and honestly reported his failure to file the Walker lawsuit within the applicable statute of limitations or his intentional failures to distribute settlement and closing proceeds, Westport would not have underwritten the Westport Policy at issue.

13. In accordance with Connecticut law, Westport advised Gionfriddo of its intention to rescind the Westport Policy by letter dated December 23, 2005.

(Pl.'s Mot. Summ. J., Aff. Stephen Lang, ¶ 10).

## II. LEGAL STANDARD

■ A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. Fed.R.Civ.P. 56(c). *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1223 (2d Cir.1994). Rule 56(c) "mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *See Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548.

■ When ruling on a motion for summary judgment, the court must respect the province of the jury. The court, therefore, may not try issues of fact. *See, e.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 58 (2d Cir.1987); *Heyman v. Commerce & Indus. Ins. Co.,* 524 F.2d 1317, 1319–20 (2d Cir. 1975). It is well-established that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. Thus, the trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined ... to issue-finding; it does not extend to issue-resolution." *Gallo,* 22 F.3d at 1224.

■ Summary judgment is inappropriate only if the issue to be resolved is *both* genuine *and* related to a material fact. Therefore, the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. An issue is "genuine ... if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505 (internal quotation marks omitted). A material fact is one that would "affect the outcome of the suit under the governing law." *Id.* As the Court observed in *Anderson*: "[T]he materiality determination rests on the substantive law, [and] it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Id.* Thus, only those facts that *must* be decided in order to resolve a claim or defense will prevent summary judgment from being granted. When confronted with an asserted factual dispute, the court must examine the elements of the claims and defenses at issue on the motion to determine whether a resolution of that dispute could affect the disposition of any of those claims or defenses. Immaterial or minor facts will not prevent summary judgment. *See Howard v. Gleason Corp.*, 901 F.2d 1154, 1159 (2d Cir.1990).

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant and ... draw all reasonable inferences in its favor." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir.2000) (quoting *Delaware & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 177 (2d Cir.1990)). Because credibility is not an issue on summary judgment, the nonmovant's evidence must be accepted as true for purposes of the motion. Nonetheless, the inferences drawn in favor of the nonmovant must be supported by the evidence. "[M]ere speculation and conjecture" is insufficient to defeat a motion for summary judgment. *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 315 (2d Cir.1997) (quoting *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d. Cir.1990)). Moreover,

the "mere existence of a scintilla of evidence in support of the [nonmovant's] position" will be insufficient; there must be evidence on which a jury could "reasonably find" for the nonmovant. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

Finally, the nonmoving party cannot simply rest on the allegations in its pleadings since the essence of summary judgment is to go beyond the pleadings to determine if a genuine issue of material fact exists. *See Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548. "Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact," *Weinstock*, 224 F.3d at 41, if the movant demonstrates an absence of such issues, a limited burden of production shifts to the nonmovant, which must "demonstrate more than some metaphysical doubt as to the material facts, ... [and] must come forward with specific facts showing that there is a genuine issue for trial." *Aslanidis v. United States Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir.1993)(quotation marks, citations and emphasis omitted). Furthermore, "unsupported allegations do not create a material issue of fact." *Weinstock*, 224 F.3d at 41. If the nonmovant fails to meet this burden, summary judgment should be granted. The question then becomes: is there sufficient evidence to reasonably expect that a jury could return a verdict in favor of the nonmoving party. *See Anderson*, 477 U.S. at 248, 251, 106 S.Ct. 2505.

Because one defendant in this case is proceeding *pro se*, the court must read the evidence against that defendant in a manner most favorable to her. *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994). Moreover, because the process of summary judgment is "not obvious to a layman," *Vital v. Interfaith Medical Ctr.*, 168 F.3d 615, 620 (2d Cir.1999), the district court must ensure that a *pro se* defendant

understands the nature, consequences and obligations of summary judgment, *see id.* at 620–621. Thus, the district court may itself notify the *pro se* defendant as to the nature of summary judgment; the court may find that the opposing party's memoranda in support of summary judgment provide adequate notice; or the court may determine, based on thorough review of the record, that the *pro se* plaintiff understands the nature of summary judgment. *See id.* After reviewing the plaintiff's memorandum in support of summary judgment and the notice to the *pro se* litigant informing her of the nature and consequences of summary judgment, the court concludes that the *pro se* defendant has received adequate notice of the nature, consequences and obligations of summary judgement.

## III. DISCUSSION

 To void an insurance policy under Connecticut law, Westport must prove "(1) a misrepresentation (or untrue statement) by the [insured] which was (2) knowingly made and (3) material to [the insurer]'s decision whether to insure." *Pinette v. Assurance Co. Of America*, 52 F.3d 407, 409 (2d Cir.1995); *Mt. Airy Ins. Co. v. Millstein*, 928 F.Supp. 171, 174 (D.Conn. 1996).

### A. Misrepresentation

 The plaintiff has established the absence of a genuine issue as to whether Gionfriddo's answer to questions on the application that he was not aware of "any fact or circumstance, act, error, omission, or personal injury which might be expected to be the basis of a claim or suit [a]gainst him" constituted a misrepresentation. In view of the fact that Gionfriddo admitted to improperly converting and appropriating client funds to cover his gambling debts during a period that spanned from January 2000 to July 2005, Gionfriddo had to be aware of his acts, errors, and omissions that could be expected to be the basis of a claim or suit against him in April 2005 when he submitted his application for insurance coverage. *See Mt. Airy*, 928 F.Supp. at 174 (holding that attorney made a misrepresentation in an application for a professional liability insurance policy when he stated that he was not aware of any act, circumstance, error or omission which may result in a claim against him, when the attorney had misappropriated his client's mortgage funds).

### B. "Knowingly Made"

 Westport has also established the absence of a genuine issue as to whether Gionfriddo's misrepresentation was knowingly made. In *Pinette*, the Second Circuit explained the standard for determining whether a misrepresentation was "knowingly made" under Connecticut law:

For a material misrepresentation to render a contract voidable under Connecticut law, the misrepresenting party must know that he is making a false statement. "Innocent" misrepresentations-those made because of ignorance, mistake, or negligence-are not sufficient grounds for rescission. See *Middlesex Mut. Assurance Co. v. Walsh*, 218 Conn. 681, 691–92, 590 A.2d 957, 963 (1991) ...

When Connecticut courts speak of "innocent" misrepresentations, they generally have in mind the situation in which the applicant does not know that the information he is providing is false. *See, e.g., Middlesex Mut.*, 218 Conn. at 692, 590 A.2d at 963–64 ("[I]n order to constitute a misrepresentation sufficient to defeat recovery on an automobile insurance policy, a material representation on an application for such a policy must be known by the insured to be false when made."); *Lazar v. Metropolitan Life*

*Ins. Co.,* 290 F.Supp. 179, 181 (D.Conn. 1968) (finding an applicant's misrepresentations on an application not "knowing" as a matter of law where the agent stated that the false answers were not within the scope of the question).

*Pinette,* 52 F.3d at 409–410. The evidence in this case cannot support a conclusion that the misrepresentation made on Gionfriddo's application was simply the result of ignorance, mistake, or negligence. Gionfriddo was engaged in intentional misconduct during a four-year period that could have given rise to claims or suits against him. He was fully aware of this fact when he submitted his application to Westport. Thus, Gionfriddo knew the information he was providing to Westport was false.

### C. Materiality

▮▮▮▮ A misrepresentation is material "when, in the judgment of reasonably careful and intelligent persons, it would so increase the degree or character of the risk of the insurance as to substantially influence its issuance, or substantially affect the rate of premium." *Pinette,* 52 F.3d at 411 (quoting *Davis–Scofield Co. v. Agricultural Ins. Co.,* 109 Conn. 673, 677–78, 145 A. 38 (1929)). The affidavit of the underwriter, Stephen Lang, establishes that Gionfriddo's misrepresentation affected the risk assumed by Westport, that Westport reasonably relied on the truthfulness of the answers provided by Gionfriddo, and that Westport would not have covered Gionfriddo under its policy had it been aware of the misrepresentations he made in his application. Knowledge that Gionfriddo was involved in numerous acts of misconduct, including but not limited to

misuse of client funds, that could have formed the basis for claims against him would have substantially affected Westport's decision to provide Gionfriddo with coverage. Therefore, the court concludes that the requirements for rescission of an insurance contract have been satisfied here.[2]

### D. Objecting Claimant–Defendants' Arguments

Claimant-defendants Manuel and Messina, the only two of the remaining defendants to file objections to the plaintiff's motion, argue that summary judgment should be denied because a genuine issue of material fact exists with respect to the state of mind of Gionfriddo at the time he signed his application. Manuel and Messina also argue that the documents in Gionfriddo's criminal case that are relied on by the plaintiff do not specifically mention their claims against Gionfriddo. They contend that, therefore, there is no evidence that Gionfriddo knew about their claims at the time he signed his application.

As an initial matter, the appropriate inquiry is not whether Gionfriddo knew of the claims of Manuel and Messina at the time he signed his application, but rather whether Gionfriddo knew of *any* potential claims against him at the time he signed his application. Gionfriddo's failure to disclose *any* potential claim can make the policy void *ab initio.* Because the policy is void *ab initio,* Manuel and Messina cannot recover under it even if Gionfriddo was unaware of their specific claims when he filed his application.

---

**2.** Because the court concludes that the contract is void *ab initio,* it need not reach the issues of whether all of the claims were properly reported during the policy period or the applicable extended reporting period, or whether such claims are barred by the exclusion for claims that the insured knew of or could have reasonably foreseen at the effective date of the policy.

The court also finds unpersuasive the defendants' argument that there is a genuine issue of material fact regarding Gionfriddo's state of mind at the time he submitted his application. As discussed above, the evidence establishes that Gionfriddo was engaging in intentional acts of misconduct that defrauded his clients prior to signing the application. Thus, he knew that his statement that he was unaware of any potential claims against him was false when he signed his application.

 Finally, the defendants argue that the statements contained in the affidavit of Stephen Lang do not provide sufficient evidence that the misrepresentations by Gionfriddo were material; they point to no evidence to support this argument. However, the only reasonable conclusion on this record is that, as an underwriter in Westport's professional liability division, Lang is familiar with the kinds of information relied upon by Westport when deciding whether to issue a professional liability insurance policy. Moreover, even in the absence of the Lang affidavit, the only reasonable conclusion on this record is that knowledge of the numerous potential claims against Gionfriddo for legal malpractice would have substantially influenced an insurer's decision.

Therefore, the court concludes that is no genuine issue of material fact as to whether Gionfriddo made a knowing misrepresentation to the plaintiff on his application for insurance, and Westport is entitled to judgment as a matter of law.

## IV. CONCLUSION

Accordingly, Plaintiff's Motion for Summary Judgment (Doc. No. 44) is hereby GRANTED. The liability insurance policy issued by Westport Insurance Corporation to Stephen T. Gionfriddo, policy no. WLW307004395000, is declared void *ab initio*, and judgment shall enter in favor of the plaintiff.

The Clerk shall close this case.

It is so ordered.