(79 Misc. Rep. 263.)

### KASPRZYK v. METROPOLITAN LIFE INS. CO.

(Supreme Court, Special Term, Erie County. January 27, 1913.)

1. INSURANCE (§ 655*)—LIFE INSURANCE—FORFEITURE—MISREPRESENTATIONS.
   In determining the good faith of insured in stating that he had not been treated by a physician within a certain time, the question whether a physician, consulted by him under the belief that he was authorized to practice, was in fact licensed, was immaterial.

   [Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1677–1685; Dec. Dig. § 655.*]

2. INSURANCE (§ 293*)—LIFE INSURANCE—MISREPRESENTATIONS.
   Insured stated in his application that he had but two brothers and one sister, and that one brother had died of brain fever and the other from an unknown cause, when both died of consumption, of which accused also died, and nine other brothers and sisters had died before reaching the age of 3½ years. Insured also stated that he had last consulted a physician four months before his application for "nose bleed," and had not otherwise been under the care of a physician within two years and was in sound health, when, in fact, he had been attended by a physician for laryngitis a month before the policy was issued. *Held,*

———

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

that such misrepresentations were material so as to make the policy void whether insured knew of their falsity or not.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 693; Dec. Dig. § 293.*]

3. INSURANCE (§ 256*)—LIFE INSURANCE—FRAUD—ACTUAL FRAUD—NECESSITY.

Under a life policy providing that all statements made by insured shall, in absence of fraud, be deemed representations and not warranties, if misrepresentations were material, it was unnecessary to show actual fraud to avoid the policy.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 540, 549; Dec. Dig. § 256.*]

4. INSURANCE (§ 262*)—LIFE INSURANCE—FRAUD.

A fraudulent statement by insured is a statement known to be false.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 557; Dec. Dig. § 262.*]

5. INSURANCE (§§ 253, 264*)—LIFE INSURANCE — "REPRESENTATION"—"WARRANTY."

A "representation" is a statement by insured which is material to the risk, while a "warranty" is any statement, whether material or not, which the parties have expressly agreed is true.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 538–542, 558, 559, 562–566; Dec. Dig. §§ 253, 264.*

For other definitions, see Words and Phrases, vol. 7, pp. 6108–6110; vol. 8, pp. 7396–7404.]

6. INSURANCE (§ 256*)—LIFE INSURANCE—REPRESENTATIONS—EFFECT.

In absence of statute, representations as to material matter, which are false, avoid the policy, though not fraudulently made.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 540, 549; Dec. Dig. § 256.*]

7. INSURANCE (§ 256*)—LIFE INSURANCE—MISREPRESENTATIONS—EVIDENCE.

Where a misrepresentation is practically immaterial, or only remotely bears on the materiality of the risk, insured's good faith in making the statement should have been given considerable weight.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 540, 549; Dec. Dig. § 256.*]

8. INSURANCE (§ 668*)—LIFE INSURANCE—ACTIONS—DIRECTION OF VERDICT.

A verdict should be directed for defendant, in an action on a life policy, where a material false representation is shown by uncontradicted evidence, without a waiver being shown by the company.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1556, 1732–1770; Dec. Dig. § 668.*]

Appeal from City Court of Buffalo.

Action by Francisca Kasprzyk against the Metropolitan Life Insurance Company. From a judgment for plaintiff, defendant appeals. Reversed and new trial granted.

Maulsby Kimball, of Buffalo, for appellant.

Frank S. Burzynski, of Buffalo, for respondent.

BISSELL, J. This action was brought upon a policy of insurance issued February 24, 1911, upon the life of Leon B. Kasprzyk, for the benefit of his mother. The insured died June 29, 1911, from pulmonary tuberculosis as a primary cause and laryngeal tuberculosis as a contributing cause. The defense is based on misrepresentations

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

made by the insured in his application for the policy. The application was separated into two parts, designated "A" and "B"; part "A" being information given by the applicant to the agent who wrote the application, and part "B" consisting of the statements made by the insured to the medical examiner.

The policy provides that it is issued "in consideration of the application for this policy, a copy of which application is hereto attached and made a part hereof, and of the payment of the semiannual premium," etc., and that "all statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties." In the application, which was signed by the insured, it was agreed:

"That the foregoing statements and answers and also the statements and answers 'to the medical examiner are correct and wholly true and that they shall form the basis of a contract of insurance if one be issued."

A careful examination of the record discloses proofs sufficiently conclusive that certain of the answers given by the insured to the medical examiner and embodied in the application were not only not correct, but that, on the contrary, they were untrue, and the policy was obtained by material misrepresentations. It appears that, although the insured stated in his application that he had had but two brothers and one sister, and that one of the brothers had died of brain fever, and the other of a cause unknown to him, as a matter of fact both of these brothers had died of consumption, and that nine other brothers and sisters had died before attaining the age of $3\frac{1}{2}$ years; that the insured stated that the name of the physician who last attended him was Dr. Fronczak, who had attended him for "nose bleed" four months before the application was made, and that he had not been under the care of any physician within two years other than as stated, and that he was then in sound health, whereas as a matter of fact he had been attended by Dr. Urbanski, for laryngitis on January 24, 1911, a month before the policy was issued.

[1] No evidence was offered by the plaintiff to dispute or explain these misrepresentations. An effort was made to avoid the effect of the insured's misstatement respecting the medical attendance he had received by showing that Dr. Urbanski, who was a graduate of a medical college from which he had received the degree of doctor of medicine, was not a licensed physician; but the proofs of death submitted by the plaintiff included a statement signed by Nicholas J. Urbanski, M. D., to the effect that he had treated the insured for laryngitis January 24, 1911, and no evidence was offered by the plaintiff to disprove this statement. On the question of good faith of the insured it is immaterial whether Dr. Urbanski was licensed or not. The deceased consulted him as a physician, believing that he was qualified and authorized to practice medicine. The counsel for the respondent contends that the insured may not have known the facts misrepresented in his application, and at the trial claimed the right to go to the jury and have the jury speculate that, although the insured was living in the same house with his two brothers when they died, perhaps he did not know the cause of their death, and that, although he certainly knew that he had been attended by a physician a month pre-

ceding the making of the application, perhaps he may have forgotten it, and that perhaps he never knew of the death of nine brothers and sisters who died in infancy.

[2] I am of the opinion that the trial court erred in refusing to direct a verdict for the defendant. The misrepresentations made by the insured were concerning matters vital to the risk and rendered the policy void, whether the applicant knew of their falsity or not.

[3] It was not necessary for the defendant to show actual fraud. The provision in the policy that "all statements made by the insured, shall, in the absence of fraud, be deemed representations and not warranties," is substantially the language of the statute under the recent amendment of the Insurance Law. It shows that there is a broad distinction to be drawn between fraud, on the one hand, and representations and warranties, on the other hand. Obviously no such distinction would exist, and fraud and misrepresentation would be the same if the defendant were required to prove actual knowledge on the part of the insured of the falsity of representations in order to avoid the policy on the ground of misrepresentation.

Moreover, if it were the law that an insurance company could not defend a policy on the ground of misrepresentation, unless it could show actual knowledge on the part of the applicant that the statements were false, then it is plain that it would be impossible for it to protect itself and its honest policy holders against fraudulent and improper claims. It would be wholly at the mercy of any one who wished to apply for insurance, as it would be impossible to show actual fraud except in the extremest cases. It could not rely on an application as containing information on which it could act. There would be no incentive to an applicant to tell the truth.

[4, 5] There are three different classes of statements which may arise in connection with an application, to wit, fraudulent statements, representations, and warranties. It is unnecessary to define "fraud." It is a statement known to be false. The distinction between a representation and a warranty is also well settled. A "representation" is a statement which is material to the risk, while a "warranty" is any statement, whether material to the risk or not, which the parties have warranted by express agreement to be true. The change in the law was made to provide that, before a policy could be avoided on the ground of misstatements which were not knowingly false and therefore were not fraudulent, it must appear that the statements were material as to matters which really affected the risk.

Warranties, as distinguished from misrepresentations, no longer exist in this state. Insurance Law (Consol. Laws 1909, c. 28) § 58. Misrepresentations must be as to material facts, and, if such material facts are misstated, the policy is void, and this not because of fraud, but because the company did not have the truth before it on vital matters when it undertook the risk. This doctrine as now recognized by statute is wholly equitable. A company should not be permitted to defend on technicalities, but it is entitled to fair treatment and protection. The nature of the business must be recognized, and insurance must be written in the only practicable way in which it can be done. The company must get its information principally from the applicant,

and it must be able to rely on the information it receives. The health history of the family as to such things as insanity, consumption, etc., are vital facts in determining the risk. All parties to the transaction fully recognize that such matters are of the essence of the contract. If the applicant undertakes to state positively that the fact is as represented, he must know that it is true, or that he is taking chances of his insurance not being valid. If he does not know whether the statement is true or not, or is unwilling to take the risk, he can say so, and it is then for the company to say whether or not it will write the insurance without the information which he is unable to give.

[6] The rule is thus stated in Cyc. vol. 25, p. 801, article "Life Insurance":

"Representations as to a material matter which are false in fact avoid the policy, *although not fraudulently made.*"

And again at pages 805 and 806:

"Misrepresentations defeat a policy so far, and only so far, as they are material to the contract; and misrepresentation is material in such sense *when knowledge of the truth as to the fact* misstated might reasonably influence the company *in determining whether or not to* enter into the contract as made. The company may, however, make any fact material by specifically inquiring about it and providing in the contract that the answer of the applicant shall be warranties. Therefore, falsity in the statements in the policies or in the application which are made warranties will avoid the insurance without regard to the materiality of such statements to the risk."

The language just quoted states the general law apart from the statute above referred to, and clearly indicates that the difference between a representation and a warranty is as to the subject-matter of the statement being material to the risk, and not as to any question of knowledge on the part of the applicant.

At page 800 of the same article it is said:

"The effect of the falsity of material or fraudulent statements, which do not constitute warranties, is to render the policy voidable at the company's option."

In Hadcock v. Osmer, 153 N. Y. 604, 47 N. E. 923, the court states the rule as follows:

"Where a party represents a material fact to be true to his personal knowledge, as distinguished from belief or opinion, when he does not know whether it is true or not, and it is actually untrue, he is guilty of falsehood even if he believes it to be true; and if the statement is thus made with the intention that it shall be acted upon by another, who does so act upon it to his injury, the result is actionable fraud."

In the case of Armour v. Transatlantic Fire Insurance Company, 90 N. Y. 450, at page 455, Judge Rapallo says:

"It is not necessary, in all cases, in order to sustain a defense of misrepresentation in applying for the policy, to show that the misrepresentation was intentionally fraudulent. A misrepresentation is defined by Phillips to be where a party to the contract of insurance, either purposely or through negligence, mistake, or inadvertence, or oversight, misrepresents a fact which he is bound to represent truly (Phil. Ins. § 537), and he lays down the doctrine that it is an implied condition of the contract of insurance that it is free from misrepresentation or concealment, whether fraudulent or through mis-

take. If the misrepresentation induces the insurer to enter into a contract which he would otherwise have declined, or to take a less premium than he would have demanded had he known the representation to be untrue, the effect as to him is the same if it was made through mistake or inadvertence, as if it had been made with a fraudulent intent, and it avoids the contract. An immaterial misrepresentation, unless in reply to a specific inquiry, or made with a fraudulent intent, and influencing the other party, will not impair the contract. But if the risk is greater than it would have been if the representation had been true, the preponderance of authority is to the effect that it avoids the policy, even though the misrepresentation was honestly made. Phillips on Ins. §§ 537–542; Wall v. Howard Ins. Co., 14 Barb. 383."

See, also, Bacon on Benefit Societies & Life Insurance (3d Ed.) § 210. Under the title "Difference between Warranty and Representation" (Id. § 196) it is said:

"Representations to insurers before or at the time of making a contract are a presentation of the elements upon which to estimate the risk proposed to be assumed. They are the basis of the contract; its foundation, on the face of which it is entered into. If wrongly presented, in any way material to the risk, the policy that may be issued thereupon will not take effect. To enforce it would be to apply the insurance to a risk that was never presented."

[7] Where the misrepresentation is practically immaterial, or where its bearing is only technical and remote, then good faith on the part of the insured can and should have a considerable bearing. Where, however, the misrepresentation goes to the very essence of the contract, then the vital consideration is that the insurance company, in issuing its policy, relied and intended to rely on the facts disclosed. Both parties knew this, and there is no hardship in enforcing the rule that, before an applicant can represent a state of facts to an insurance company and obtain a policy on the strength of it, he must know that such facts are at least substantially correct.

In the case of Campbell v. Mutual Life Insurance Company, 98 Mass. 381, on page 396, it is held, in substance, that the effect of a misrepresentation which is not fraudulently made depends entirely on its being material to the risk. Misrepresentations go to the substantial basis on which the policy is written. The court says:

"An untrue statement or denial of a material fact, preceding or contemporaneous with the contract of insurance, prevents the policy that is based upon it from taking effect as a contract whether the statement was made ignorantly and in good faith or otherwise."

The whole matter is summed up in Cooley's briefs on the Law of Insurance, vol. 2, p. 1166, where it is said:

"It is a well-settled rule, supported by abundant authority, that, where the insurer is induced to enter into a contract by a misrepresentation as to material facts, the policy will be avoided whether the misrepresentation was made willfully, with intent to deceive, or through an innocent mistake."

The misrepresentations made in the application for the policy here under consideration were of facts; they were not mere matters of opinion. All of them were material to the risk, and the result of them was the issuance of a policy on a risk entirely different from the one which the appellant thought it was undertaking; and the policy is

therefore void, whether the insured knew that the statements were false or not.

[8] It is the settled law that a verdict should be directed for the defendant when a material false representation is shown by uncontradicted evidence and no waiver thereof by the insurer is proved. Dwight v. Germania Life Insurance Co., 103 N. Y. 341, 8 N. E. 654, 57 Am. Rep. 729; Finn v. Prudential Ins. Co., 98 App. Div. 588, 90 N. Y. Supp. 697; Truden v. Metropolitan Life Ins. Co., 69 App. Div. 392, 74 N. Y. Supp. 1083; Boland v. Industrial Benefit Ass'n, 74 Hun, 385, 26 N. Y. Supp. 433.

In the case at bar there is no question but that misrepresentations by the insured on vital points were shown by uncontradicted evidence. This being so, the motion for a direction of a verdict should have been granted.

The judgment appealed from is reversed, and a new trial granted, with costs to the appellant to abide the event.