CARISSA BONITO *v.* CAMBRIDGE MUTUAL FIRE
INSURANCE COMPANY
(AC 20930)

Foti, Flynn and Peters, Js.

Argued May 9—officially released July 24, 2001

*Jon D. Biller*, for the appellant (plaintiff).

*Stuart G. Blackburn*, for the appellee (defendant).

*Opinion*

FOTI, J. The plaintiff, Carissa Bonito, appeals from
the judgment of the trial court denying her motion for a

declaratory judgment. The plaintiff sought a declaratory judgment concerning the interpretation of an insurance policy that she purchased from the defendant, Cambridge Mutual Fire Insurance Company. The plaintiff claims that the court improperly ignored the plain language of the policy and an endorsement to the policy. She also claims, in the alternative, that "at the very minimum the parties have set forth alternative plausible interpretations of the same policy language" and that the court improperly failed to accept her interpretation of the endorsement. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our analysis. In April, 1997, the plaintiff renewed her home insurance policy with the defendant. Section I of the policy delineated the defendant's liability limits as follows: $95,000 for loss of the dwelling (coverage A); $9500 for loss of accessory structures (coverage B); $66,500 for loss of personal property (coverage C); and $19,000 for loss of use (coverage D). The plaintiff also purchased from the defendant supplemental insurance, known as a "Superior Home Guaranteed Repair or Replacement Cost Protection Endorsement" (endorsement). On February 17, 1998, fire destroyed the plaintiff's home.

The plaintiff and the defendant did not agree on the defendant's liability for the plaintiff's losses. Specifically, the parties adopted different positions concerning the endorsement's effect on the plaintiff's policy. In February, 1999, the plaintiff filed a complaint against the defendant that included claims for breach of contract and negligence, and a request for declaratory relief. In July, 1999, the plaintiff filed a motion for a declaratory judgment[1] in which she requested that the

---

[1] General Statutes § 52-29 (a) provides: "The Superior Court in any action or proceeding may declare rights and other legal relations on request for such a declaration, whether or not further relief is or could be claimed. The declaration shall have the force of a final judgment." See also Practice Book § 17-54 (implementing provisions of § 52-29).

court rule that the endorsement provides that "when coverage A for her building increases, coverages B, C and D relating to other structures, personal property and loss of use, respectively, are increased proportionally." In other words, the plaintiff wanted the court to accept her interpretation of the policy, namely, that the endorsement not only permitted her to recover the full replacement cost in excess of her policy limit for the loss of her dwelling, but also that it permitted her to collect in excess of her policy limits under the other coverages set forth in her policy. She argues that the endorsement increased the liability limits under coverages B, C and D because those coverages were based on a percentage of coverage A, and that the endorsement exceeded coverage A's limit to the actual replacement cost of her dwelling.

The court denied the plaintiff's motion for a declaratory judgment. The court concluded that the policy's plain language did not support the plaintiff's interpretation and that "[w]hen read in context and viewed in its entirety, the [endorsement] . . . indicates that the policy was intended to provide replacement cost insurance only for the plaintiff's dwelling (Coverage A)."

We first set forth our standard of review. "It is the function of the court to construe the provisions of the contract of insurance. *Gottesman* v. *Aetna Ins. Co.*, 177 Conn. 631, 634, 418 A.2d 944 (1979). Our review of the trial court's decision of this issue is de novo. Unlike certain other contracts . . . where . . . the intent of the parties and thus the meaning of the contract is a factual question subject to limited appellate review . . . construction of a contract of insurance presents a question of law for the court which this court reviews de novo. . . . *Aetna Life & Casualty Co.* v. *Bulaong*, 218 Conn. 51, 58, 588 A.2d 138 (1991). *Flint* v. *Universal Machine Co.*, 238 Conn. 637, 642–43, 679 A.2d 929 (1996)." (Internal quotation marks omitted.) *Jack A.*

*Halprin, Inc.* v. *Hermitage Ins. Co.*, 58 Conn. App. 598, 600, 753 A.2d 954 (2000).

Well established principles guide our interpretation of the policy. "The [i]nterpretation of an insurance policy, like the interpretation of other written contracts, involves a determination of the intent of the parties as expressed by the language of the policy. . . . The determinative question is the intent of the parties, that is, what coverage the . . . [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy. . . . It is axiomatic that a contract of insurance must be viewed in its entirety, and the intent of the parties for entering it derived from the four corners of the policy. . . . The policy words must be accorded their natural and ordinary meaning . . . [and] any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy. . . . A necessary predicate to this rule of construction, however, is a determination that the terms of the insurance policy are indeed ambiguous. . . . The fact that the parties advocate different meanings of the [insurance policy] does not necessitate a conclusion that the language is ambiguous." (Internal quotation marks omitted.) *Community Action for Greater Middlesex County, Inc.* v. *American Alliance Ins. Co.*, 254 Conn. 387, 399, 757 A.2d 1074 (2000).

We now turn to the policy language at issue in the present case. As we set forth earlier in this opinion, the plaintiff's policy delineated liability limits, on the policy's declaration page and elsewhere, in four separate categories or "coverages." The endorsement amended the policy by permitting the plaintiff to receive the full repair or replacement cost of her dwelling in the event of loss, irrespective of the liability limit

expressed for her dwelling under coverage A in her policy.[2]

The plaintiff advances several arguments in support of her claim that the court improperly denied her motion for a declaratory judgment. First, she argues that the defendant's use of the word "amounts" in the first sentence of the endorsement indicates that it increased her policy's limits with respect to losses arising under

[2] The replacement cost endorsement is as follows: "SUPERIOR HOME GUARANTEED REPAIR OR REPLACEMENT COST PROTECTION ENDORSEMENT (For One and Two Family Dwellings Built Since 1925). For the premium charged, we agree to amend the present coverage amounts shown on the Declarations page in accordance with the provisions which follow: IF YOU HAVE: (1) When this Endorsement is issued agreed to insure your Dwelling under Coverage A to 100 [percent] of full replacement cost using an appraisal method acceptable to us; and (2) Allowed us at each anniversary date of this policy to adjust the premium and limits of liability for Coverages A, B, C and D and to adjust for inflation so that the limit for Coverage A equals the full replacement cost of the dwelling; and (3) Informed us, within 30 days of completion, of changes made to the dwelling during the policy term which increased the replacement cost of the dwelling 5 [percent] or more; and if you have purchased additional insurance for your Coverage A equal to the amount of such cost and informed us as soon as you made this change to your dwelling; and (4) Elected to repair or replace the damaged building. WE WILL AMEND THE POLICY TO DELETE PARA-GRAPH b. OF '3. LOSS SETTLEMENT' UNDER 'SECTION 1—CONDITIONS' AND REPLACE IT WITH THE FOLLOWING: b. Buildings under Coverage A at replacement cost without deduction for depreciation, subject to the following: (1) We will pay the cost or replace without deduction for depreciation, but not exceeding the smallest of the following amounts. We agree that this amount may exceed the limit of liability which applies to Coverage A: (a) The cost to replace the damaged part of the building with the same materials and for the same use. (b) The amount you had to spend to repair or replace the damaged building. (2) When the cost to repair or replace the damage is more than $2500 or more than 5 [percent] of the amount of insurance on the building, whichever is less, we will pay no more than the actual cash value of the damage until actual repair or replacement is completed. You may disregard this replacement cost provision and make claim for loss or damage on an actual cash value basis. Then you can make claim within 180 days after loss for any additional liability brought about by this provision. This policy does not apply to land, including land on which the building or structures are located. All other provisions of this policy apply."

coverages B, C and D, as well as the coverage increase concerning her dwelling under coverage A. Second, she points out that the endorsement states that the defendant may adjust the premiums and limits of liability for coverages A, B, C and D, and claims that this is proof that all coverages are affected once coverage A is redetermined under the terms of the endorsement. Third, she argues that the policy demonstrates "the stated intent of the insurance company to make coverages B, C and D percentages of coverage A." It follows, she argues, that once the endorsement reestablished the liability limit of coverage A, that the other coverages should increase proportionally. Last, the plaintiff argues that neither the endorsement nor the policy specifically states that the increase in coverage A per the endorsement would not affect the liability limits under the other coverages. We conclude, as did the trial court, that the policy and the endorsement are not ambiguous, and that the endorsement affected the plaintiff's benefits in regard to her dwelling only.

Certain provisions within the policy limit liability to a percentage of the stated liability limits of coverage A; liability under other sections of the policy is not based on the liability limits of coverage A. The endorsement is unambiguous. Read in its entirety, the endorsement unequivocally indicates that it applies to the plaintiff's dwelling. Nothing in the endorsement implies that it affects any other provisions of the policy or confers any proportional increase in coverages B, C or D whatsoever. To the contrary, it indicates that all other provisions of the policy apply. Moreover, the endorsement specifically describes that provision of the policy that it amends; it did not in any way amend the policy's coverage limits. The mention of coverages A, B, C and D in the conditional portion of the endorsement does not affect our analysis. Requiring the plaintiff to permit the defendant to adjust the premium and limits of liabil-

ity under those coverages does not in any way imply that the endorsement increased her coverage with regard to anything but her dwelling.

The plaintiff argues that the endorsement does not unambiguously state that "once coverage A is established under the terms of the guaranteed replacement cost endorsement, the insured loses the expectation that her contents, additional living expenses and other structures coverage remain as a specific percentage of the increased coverage A limit." The insurance policy did not need to so state because nothing in the endorsement purported to affect the policy's liability limits.

Reading the policy and the endorsement as a whole and considering all relevant provisions; see *Jack A. Halprin, Inc.* v. *Hermitage Ins. Co.*, supra, 58 Conn. App. 601; we conclude that all of the liability limits expressed on the policy's declaration page remained in effect after the endorsement became effective. The endorsement did not reset or alter the policy limits or even the policy limit for coverage A. Rather, it provided additional coverage "which may exceed the limit of liability which applies to Coverage A . . . ." The endorsement did not suggest that coverage A's stated liability limit or the liability limits set forth for any other coverages were no longer valid. To accept the plaintiff's interpretation of the policy would render the liability limits meaningless and would require us to import into the endorsement language or a meaning that is not there. "When the plain meaning and intent of the language is clear, a clause . . . cannot be enlarged by construction. There is no room for construction where the terms of a writing are clear and unambiguous, and it is to be given effect according to its language." (Internal quotation marks omitted.) *Enfield Pizza Palace, Inc.* v. *Ins. Co. of Greater New York*, 59 Conn. App. 69, 75–76, 755 A.2d 931 (2000).

The plaintiff emphasizes that the defendant's use of the word "amounts" in the first sentence of the endorsement creates an ambiguity. She argues that it demonstrates that the endorsement affected more than just her dwelling coverage. We decline the plaintiff's invitation to take words and phrases out of context in an attempt to change their meaning. " '[T]he individual clauses of a contract . . . cannot be construed by taking them out of context and giving them an interpretation apart from the contract of which they are a part.' *Levine* v. *Advest, Inc.*, 244 Conn. 732, 753, 714 A.2d 649 (1998)." *Enfield Pizza Palace, Inc.* v. *Ins. Co. of Greater New York*, supra, 59 Conn. App. 76. Nothing in the endorsement created an ambiguity, and we will not "torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . ." (Internal quotation marks omitted.) *Vitti* v. *Allstate Ins. Co.*, 245 Conn. 169, 177, 713 A.2d 1269 (1998).

The plaintiff further argues that we should examine certain other form replacement cost endorsements that, she argues, contain clearer language that the defendant could have used and that would have prevented this dispute as to the endorsement's effect. She argues that we should consider those endorsements as evidence that the defendant's endorsement did not alter the proportionality that existed between coverage A and coverages B, C and D. While the introduction of such extrinsic evidence is permissible when an ambiguity exists; see *Metropolitan Life Ins. Co.* v. *Aetna Casualty & Surety Co.*, 255 Conn. 295, 306, 765 A.2d 891 (2001); we need interpret the terms of an unambiguous policy as they are written.

Likewise, the plaintiff argues that the court improperly failed to interpret the policy in her favor. Where an ambiguity in a policy's terms is present, courts "often apply the contra proferentem rule and interpret a policy against the insurer." (Internal quotation marks omit-

ted.) Id. This rule does not apply, as here, where no ambiguity exists.

The judgment is affirmed.

In this opinion the other judges concurred.