[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION 
This lawsuit arises from an accident which took place on March 31, 1995 on Interstate 95 northbound near East Lyme, Connecticut.
The plaintiff, Syndey McKenzie, was operating a motor vehicle which he had slowed for traffic in front of him. The plaintiff was struck from behind by a vehicle owned and driven by William Smith, resulting in injuries to the plaintiff. A lawsuit was brought against Smith, and CT Page 896 against Dattco, Inc., which was the owner and operator of another vehicle. The allegations against Dattco and its driver (Arton) were that their vehicle had improperly pulled to the side of the roadway but remained partially in the traveled portion, thus blocking the flow of traffic and causing the collision between Smith and the plaintiff.
During the pendency of the lawsuit, a settlement was made between the plaintiff and Smith for the amount of $50,000 which exhausted the limits of Smith's policy. That settlement brought about the citing in of Nationwide Insurance which was the plaintiff's own insurance carrier under the terms of its insurance policy which provided for underinsured motorist coverage. The Nationwide policy coverage in the amount of $300,000. At jury selection, an agreement provided was reached between the plaintiff and Dattco, Inc. where the claim against Dattco and its driver was settled for the amount of $25,000. Subsequently, the trial before a jury proceeded only against Nationwide on a claim for underinsured motorists benefits.
Prior to the presentation of evidence, the defendant, Nationwide Insurance, moved the court for permission to make a claim for apportionment of liability with respect to Dattco, its driver, and Smith. See General Statutes § 52-572h. The court denied the request for apportionment, incorrectly in light of the subsequent Supreme Court decision in Collins v. Colonial Penn Ins. Co., 257 Conn. 718, 778 A.2d 899
(2001).
The case was submitted to the jury which was instructed that their task was to assess the full extent of fair, just and reasonable damages caused to the plaintiff, Mr. McKenzie, as a result of the accident of March 31, 1995. The jury returned a verdict in favor of Mr. Mckenzie in the amount of $4,003 in economic damages and $105,000 in noneconomic damages for a total of $109,003.
The question presently before the court is whether the amount of settlements paid by the underinsured driver and the joint tortfeasor totaling $75,000 should be deducted from the verdict rendered by the jury. The plaintiff claims that the verdict should not be offset by the settlement amount. In support of its argument, the plaintiff cites that the Nationwide policy contains what is known as "conversion coverage" (General Statutes § 38a-336a). While the conversion coverage is not in and of itself dispositive of the issues raised, the conversion coverage endorsement to this particular policy forms a basis for the plaintiff's argument. In its conversion coverage endorsement, Nationwide modifies its policy from its original language which reads in relevant part: CT Page 897
"The limits of this coverage and/or any amount payable under this coverage, whichever are less, will be reduced by:
(a) any amount paid by or for any liable parties."
In lieu of that language, the underinsured motorist conversion coverage rider states of the following:
"Amounts payable for uninsured and underinsured motorist losses. "For a loss involving an uninsured motor vehicle, the limits of this coverage and or any amount payable under this coverage, whichever are less will be reduced by:
(a) any amount paid by or for any liable parties."
Thus, the plaintiff claims that Nationwide should only be allowed reductions in the event of an "uninsured' and not an "underinsured" motorist.
A review of General Statutes § 38a-336a, entitled "Underinsured motorist conversion coverage," does not offer any indication that the purpose of the statute is to provide duplicate payment under these circumstances. The conversion coverage is meant to offer additional coverage in the event that the damages received by the plaintiff were less than the "fair, just and reasonable damages of the covered person." General Statutes § 38a-336a (e). To that end, the jury has made a determination as to the fair, just and reasonable damages of the covered person, and its decision was that those damages were $109,003. The fact that the plaintiff in this case purchased and received "conversion coverage" does not in any way justify the result being sought, which is that they should be able to retain the $75,000 received previously from the tortfeasors, and in addition be paid in the amount of the jury verdict by Nationwide.
"The [i]nterpretation of an insurance policy, like the interpretation of other written contracts, involves a determination of the intent of the parties as expressed by the language of the policy. . . . The determinative question is the intent of the parties, that is, what coverage the . . . [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy. . . . It is axiomatic that a contract of insurance must be viewed in its entirety, and the intent of the parties for entering it derived from the four corners of the policy. . . ." (Internal quotation marks omitted.)Community Action for Greater Middlesex County, Inc. v. American AllianceIns. Co., 254 Conn. 387, 399, 757 A.2d 1074 (2000); Bonito v. CambridgeMutual Fire Ins. Co., 64 Conn. App. 487, 490, 780 A.2d 984 (2001). CT Page 898
Additionally, the policy provides a section entitled "duplicate payment" which is part of the uninsured and underinsured motorist coverage which states that "we will make no duplicate payment to or for any insured for the same element of loss." That language clearly reflects the terms of General Statutes § 38a-335 (c).
General Statutes § 38a-335 (c) provides in part that "[i]n no event shall any person be entitled to receive duplicate payments for the same element of loss." That provision of the statute has been enforced in the decisions of the Supreme Court in Peck v. Jacquemin, 196 Conn. 53,491 A.2d 1043 (1985); and Buell v. American Universal Ins. Co.,224 Conn. 766, 621 A.2d 262 (1993). That statute as well as the cases in which it has been cited support the proposition that the prohibition against duplicate payment is not limited to the language of a contract. Instead, it is a matter of law and public policy.
Those same concepts have been applied recently by our Supreme Court inHaynes v. Yale-New Haven Hospital, 243 Conn. 17, 699 A.2d 964 (1997), andCollins v. Colonial Penn Ins. Co., supra, 257 Conn. 718. "[T]he purpose of underinsured motorist coverage is to protect the named insured and other additional insureds from suffering inadequately compensated injury caused by an accident within an inadequately insured automobile." (Internal quotation marks omitted.) Florestal v. Government EmployeesIns. Co. 236 Conn. 299, 305, 673 A.2d 474 (1996); see also Fahey v.Safeco Ins. Co. of America, 49 Conn. App. 306, 309, 714 A.2d 686 (1998). In addition, the Supreme Court has said that "the purpose of underinsured motorist insurance is to place the insured in the same position as, butno better position than, the insured would have been had the underinsured tortfeasor been fully insured." (Emphasis in original.) Haynes v.Yale-New Haven Hospital, supra, 243 Conn. 27.
In Fahey v. Safeco Ins. Co. of America, supra, 49 Conn. App. 306, the court was faced with a substantially similar situation in that the plaintiff sought to recover a verdict awarded him by a jury for an underinsured motorist claim in the amount of $90,064.77. However, prior to the trial, the plaintiff had recovered $100,000 from the tortfeasor. The court denied the plaintiff's request to add the amount of the verdict to the amount previously recovered and in so doing, stated that to do so would be an "impermissible double recovery by the plaintiff in violation of the law and public policy." Id., 312. It is noteworthy that the Fahey
decision does not refer to contract language.
In light of the foregoing, the plaintiff's motion for directed verdict and judgment is denied. The defendant's motion for reduction of verdict is granted. The verdict that was rendered by the jury in the amount of CT Page 899 $109,003 shall be reduced by the sum of $75,000. Judgment shall enter accordingly.
Robaina J.