[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: CROSS MOTIONS FOR SUMMARY JUDGMENT
CT Page 2856
Background
The plaintiff, Frances H. Sherman, is the widow of Thomas G. Sherman, Sr. a/Ida Thomas G. Sherman a/k/a Thomas Guy Sherman (hereinafter "Sherman"). She brings this action on behalf of herself as the named beneficiary of a life insurance policy with Prudential Insurance Company of America (hereinafter "Prudential") covering the decedent Sherman, as well as, the executrix of the Estate of Sherman.
The plaintiff's four count amended complaint dated March 8, 2001, alleges the following:
Count one alleges the existence of a life insurance policy, the contract date is August 15, 1997, and issuance date is September 5, 1997, bearing policy #64755515 issued by Prudential insuring the life of Sherman in the amount of $400,000 payable to the plaintiff as beneficiary. It further alleges that Sherman died on December 28, 1997, and that Prudential has refused to pay the plaintiff the insurance proceeds and therefore, Prudential has breached its contractual duty to the plaintiff.
Count two alleges that Edward D. Dowling (hereinafter "Dowling") was an insurance agent duly authorized by Prudential to solicit and issue life insurance policies on behalf of Prudential. The plaintiff claims that Prudential owed a duty to prospective insureds, such as Sherman, to adequately train and supervise its agents. The plaintiff alleges that Prudential breached its duty to Sherman by failing to adequately train and supervise Dowling. The plaintiff alleges that as a result of the breach by Prudential, the plaintiff has suffered damages.
Count three alleges that Dowling is a duly authorized insurance agent doing business in Connecticut and represented himself as an agent of Prudential. The plaintiff further alleges that Sherman relied on the skill, knowledge, experience, honesty and advice of Dowling, when he contacted Dowling to make an application for life insurance coverage. The plaintiff further alleges that Dowling personally owed a duty to Sherman in the process of applying for and obtaining the life insurance policy through Prudential. The plaintiff claims that Dowling breached this duty to Sherman, which resulted in Prudential failing to honor the life insurance policy, therefore both Dowling and Prudential are liable to the estate of Sherman.
Count four alleges that Prudential breached a duty to Sherman, in that, it failed to train and supervise Dowling properly and this breach CT Page 2857 caused damages to be suffered by the estate of Sherman.
Prudential responded to all four counts of the plaintiff's amended complaint. Prudential essentially denied any liability owed to the plaintiff as beneficiary of the life insurance policy or to the estate of Sherman. Prudential also filed six special defenses to the amended complaint; the first special defense is Prudential's right to rescind the insurance policy due to Sherman's misrepresentations in the application to policy of the status of his health at the time he completed the application. The remaining five special defenses the court does not deal with as the court's decision on the summary judgment motions will be dispositive of any remaining claims. Prudential also filed a counterclaim alleging recission of the policy.
Dowling, in his response to the amended complaint, denies that he breached any duty to the estate of Sherman as alleged in count three of the amended complaint. Dowling filed four special defenses. The court will only focus on the first special defense, which alleges that the plaintiff is barred from recovery due to Sherman's fraudulent misrepresentations. The court will not consider the remaining special defenses.
The plaintiff moves for summary judgment on count one of her complaint on the claim that the defendant, Prudential, breached its contractual obligation to pay the death benefit on the life insurance policy on Sherman's life. Prudential opposes the plaintiff's motion for summary judgment. In addition, Prudential moves for summary judgment on each count of plaintiff's complaint, as well as, on its first special defense and its counterclaim, both on the basis of recission of the insurance policy due to the misrepresentations made by Sherman in the application. Dowling has also filed a motion for summary judgment on the issue that he is not liable to the plaintiff, as he owed no legal duty to Sherman, and, therefore, owed no duty to the plaintiff
Discussion
The court first reviews the standards it must apply in deciding a motion for summary judgment. Summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 17-49; H.O.R.S.E. of Connecticut, Inc. v. Washington, 258 Conn. 553,559 (2001); Alvarez v. New Haven Register Inc., 249 Conn. 709, 714
(1999); Nichols v. Lighthouse Restaurant, Inc., 246 Conn. 156, 163
(1998); Peerless Ins. Co. v. Gonzalez, 241 Conn. 476, 481 (1997); seeSherwood v. Danbury Hospital, 252 Conn. 193, 201 (2000); Rivera v. DoubleCT Page 2858A. Transportation, Inc., 248 Conn. 21, 24 (1999).
The party moving for summary judgment bears the burden of proving the absence of a dispute as to any material fact which, under applicable principles of substantive law, entitles him to a judgment as a matter of law; and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. H.O.R.S.E. of Connecticut, Inc. v. Washington, 258 Conn. 553, 559
(2001); Rivera v. Double A. Transportation, Inc., supra, 248 Conn. 24. "To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact." Wilt v. St. Vincent'sMedical Center, 252 Conn. 363, 372 n. 7 (2000). "Although, the moving party must show the nonexistence of any material fact, an opposing party must substantiate its adverse claims by showing there is a genuine issue of material fact along with the evidence disclosing the existence of such an issue." Paul Revere Life Ins. Co. v. Pastena, 52 Conn. App. 318, 322, cert. denied, 248 Conn. 917 (1999).
"In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. The test is whether a party would be entitled to a directed verdict on the same facts." Sherwood v. Danbury Hospital, supra, 252 Conn. 201; Serrano v.Burns, 248 Conn. 419, 424 (1999); Connell v. Colwell, 214 Conn. 242,246-47 (1990); Forte v. Citicorp Mortgage, Inc., 66 Conn. App. 475, 482
(2001). In Connecticut, a directed verdict may be rendered only if, on the evidence viewed in the light most favorable to the nonmovant, the trier of fact could not reasonably reach any other conclusion than that embodied in the verdict as directed. United Oil Co. v. UrbanRedevelopment Commission, 158 Conn. 364, 380 (1969); Vuono v. Eldred,155 Conn. 704, 705 (1967). "In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." Nolan v. Borkowski,206 Conn. 495, 500 (1988); Telesco v. Telesco, 187 Conn. 715, 718
(1982).
The issue before this court is whether the life insurance policy issued by Prudential on Sherman's life in the amount of $400,000 is enforceable or is the policy rescinded due to misrepresentations regarding the status of his health made by Sherman during the application process.
The standard for review of a contract of insurance was recently set forth in Bonito v. Cambridge Mutual Fire Ins. Co., 64 Conn. App. 487,489-90, cert. denied, 258 Con. 926 (2001):
"It is the function of the court to construe the CT Page 2859 provisions of the contract of insurance. Gottesman v. Aetna Ins. Co., 177 Conn. 631, 634, 418 A.2d 944
(1979). . . . Unlike certain other contracts . . . where . . . the intent of the parties and thus the meaning of the contract is a factual question subject to limited appellate review . . . construction of a contract of insurance presents a question of law for the court which this court reviews de novo. . . . Aetna Life Casualty Co. v. Bulaong, 218 Conn. 51, 58, 588 A.2d 138 (1991). Flint v. Universal Machine Co., 238 Conn. 637, 642-43, 679 A.2d 929 (1996)." (Internal quotation marks omitted.) Jack A. Halprin, Inc. v. Hermitage Ins. Co., 58 Conn. App. 598, 600, 753 A.2d 954 (2000).
 Well established principles guide our interpretation of the policy. "The [i]nterpretation of an insurance policy, like the interpretation of other written contracts, involves a determination of the intent of the parties as expressed by the language of the policy. . . . The policy words must be accorded their natural and ordinary meaning . . . [and] any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy. . . . A necessary predicate to this rule of construction, however, is a determination that the terms of the insurance policy are indeed ambiguous. . . . The fact that the parties advocate different meanings of the [insurance policy] does not necessitate a conclusion that the language is ambiguous."
See also; QSP, Inc. v. The Aetna Casualty Surety Co., 256 Conn. 343,351-52 (2001); O'Brien v. United States Fidelity Guaranty Co.,235 Conn. 837, 842-43 (1996).
In addition, "[u]nlike certain other contracts . . . where . . . the intent of the parties and thus the meaning of the contract is factual question . . . Construction of a contract of insurance presents a question of law. . . ." Travelers Ins. Co. v. Namerow, 257 Conn. 812, 827
(2001). Finally, "[t]here is no dispute that the statements and answers contained in an insurance application become part of that application and any contract of insurance issued on it, and that these statements and answers are material." Paul Revere Life Ins. Co. v. Pastena, supra,52 Conn. App. 323. "The information given forms the basis of the contract and defines the risk assumed." State Bank Trust Co. v. ConnecticutCT Page 2860General Life Ins. Co., 109 Conn. 67, 70 (1929).
Based on this legal overview, the court reviewed the life insurance policy and the application as provided to the court. The court also reviewed the additional medical documentation provided regarding Mr. Sherman, as well as, the affidavits and deposition transcripts provided by the parties. After thorough review, the court concludes that there are no genuine issues of material fact.
The facts the court found pertinent are as follows:
Thomas G. Sherman, Sr., (D.O.B. 12/4/57), in 1993 was found to have plasmeytoma, a form of cancer in the pelvic/lower back region of his body. That after treatment, the cancer was in remission. In 1996, with his cancer still in remission, Sherman applied for $200,000 of life insurance coverage from Prudential. After a physical examination of Sherman, Prudential did issue a policy for $200,000 of life insurance coverage for Sherman, the physical examination confirming his cancer was in remission.
On July 11, 1997, Sherman contacted Dowling, indicating he need additional life insurance coverage. On July 23, 1997, Dowling met with Sherman, at Sherman's home, to review life insurance needs and to complete an application. Sherman advised Dowling he needed additional life insurance coverage due to the fact that Sherman and his wife (the plaintiff) were in the process of adopting a child and the agency had requested he obtain additional coverage.
Sherman was advised by Dowling that if he answered yes to any of the medical questions in the application he would not be able to receive limited insurance coverage for the time between the processing of his application and the issuance of the life insurance policy. Sherman did respond yes to the question of whether he previously had been diagnosed with cancer, however, he further explained in the application that the cancer was in remission at that time. Based on his answer a limited insurance policy was issued and a premium was paid by Sherman on July 24, 1997. Sherman was also advised by Dowling that he would be receiving a telephone call from an underwriter at Prudential who would need to review the application with Sherman before a life insurance policy would be issued by Prudential. On July 28, 1997, an underwriter from Prudential did call Sherman, at that time Sherman again confirmed that his cancer was in remission. As a result of this process, Prudential issued a life insurance policy on Sherman's life in the amount of $400,000. The policy issuance date was September 8, 1997, although the policy had a contract date of August 15, 1997. The life insurance policy with accompanying application to be signed by Sherman and letter from Prudential explaining CT Page 2861 an increase in premium due to Sherman's build, were all issued by Prudential on September 8, 1997. These documents were forwarded to Dowling for his delivery to Sherman and to have Sherman sign the acceptance of the policy, as well as, confirm no changes to the answers in the application by signing the application. Dowling met with Sherman, once again at his home, on September 18, 1997, wherein the life insurance policy was delivered and Sherman did sign the application on that date indicating that there had been no changes to the answers previously given on the application of July 23, 1997 and that those answers were still true on September 18, 1997. Sherman by signing the application understood that, ". . . coverage could be invalidated if any information in the application is materially misrepresented." (See page 3 of Application.)
"The intentional withholding of information for the purpose of inducing action has been regarded, however, as equivalent to a fraudulent misrepresentation. " Pacelli Bros. Transportation Inc. v. Pacelli,189 Conn. 401, 407 (1989). "Fraud, . . . `properly includes all acts, omissions and concealments, by which an undue and unconscientious advantage is taken of another.'" Id., 410.
What Sherman failed to reveal to Prudential in the application was the fact that his cancer was not in remission at the time the application for life insurance coverage was made on July 23, 1997, with Dowling, that his cancer was not in remission on July 28, 1997, when the underwriter for Prudential called Sherman to review the answers to the application and that his cancer was no longer in remission on September 18, 1997, when he signed the application verifying that all his answers to the application were still true. Sherman withheld the change in his medical condition in spite of his being advised by Dowling that his failure to disclose any changes in his medical condition were subject to a two-year contest ability provision in the policy.
The court concludes that Sherman knew that his condition had changed and that he no longer was in remission with his cancer based on the following facts. On June 6, 1997 a bone scan was performed after Sherman had gone to Dr. Kloss, his treating physician for his cancer, to complain of pain in his back. These test results indicated metastatic bone disease at L5, S1 and T8, as well as, the left pubic bone and ninth right rib. This was the first indication that the cancer was malignant in those areas, which were new areas from where the previous cancer of 1993 was found. This was the first sign that his cancer was no longer in remission.
On July 7, 1997, x-rays performed by Dr. Kloss revealed myeloma, a form of cancer, in the pelvic region. On July 10, 1997, an MRI was performed on Sherman, the results of which revealed multiple myeloma. Sherman had CT Page 2862 this information revealed to him prior to his initial meeting with Dowling on July 23, 1997.
Furthermore, on July 28, 1997, the same day he was called by the underwriter from Prudential to confirm his answers to the application given to Dowling, Sherman met with Dr. Moss who advised Sherman that his cancer (multiple myeloma) was progressing and he was in need on chemotherapy. Sherman had additional tests done during the month of August, 1997 including a trip to Yale-New Haven Hospital to review chemotherapy treatment and to have a biopsy confirming the multiple myeloma. By September 9, 1997, Dr. Moss advised Sherman that his chances of complete remission were approximately twenty percent. On September 16, 1997, surgery on Sherman took place at Danbury Hospital where a portocath was inserted so that he would receive chemotherapy treatment for the multiple myeloma. Again, this was all done prior to the meeting with Dowling on September 18, 1997, when Sherman signed the application indicating that all his previous answers to the questions in the application of July 23, 1997 were still true on that date. Sherman died on December 28, 1997 as a result of complications from multiple myeloma.
The case law on material misrepresentations made regarding the status of the health of the applicant in the answers to questions in applications for life insurance coverage commences with State Bank TrustCo. v. Connecticut General Life Ins. Co., 109 Conn. 67 (1929). The court found at pages 70-71 that the analysis is:
Where the representation is contained in an answer to a question contained in the application which is made a part of the policy the inquiry and answer are tantamount to an agreement that the matter inquired about is material. The information given forms the basis of the contract and defines the risk assumed. Jeffrey v. United Order of the Golden Cross, 97 Me. 176, 53 A. 1102; Mutual Life Ins. Co. v. Geleynse, 241 Mich. 659, 217 N.W. 790; Travelers Ins. Co. v. Pomerantz, 246 N.Y. 63, 158 N.E. 21; Myers v. Mutual Life Ins. Co., 83 W. Va. 390, 98 S.E. 424; Mutual Life Ins. Co. v. Hurni Packing Co., 260 F. 641; Kasprzyk v. Metropolitan Life Ins. Co., 140 N.Y.S. 211; 1 May on Insurance (3d Ed.) §§ 185, 186, 187; 14 R.C.L. 1074. "The test of materiality is in the effect which the knowledge of the fact in question would have on the making of the contract. To be material, a fact need not increase, the risk, or contribute to any loss or damage suffered. It is sufficient if the knowledge of it would influence the parties in making the CT Page 2863 contract. . . . Matters made the subject of special inquiry are deemed conclusively material." Vance on Insurance, 257. In the case of a nonmedical policy such as this where, in the absence of a medical examination, complete reliance is placed upon the answers of the applicant for information as to his health, such answers are especially material as forming the basis upon which the contract of insurance is entered into.
The court further concluded that if the answers provided by the applicant were false and known to him to be false when made and that if those answers were relied on by the insurance company in issuing the policy, then the policy is invalidated. As noted by the court on pages 72-73:
 Material representations such as these, relied on by the company, which were untrue and known by the assured to be untrue when made, invalidate the policy without further proof of actual conscious design to defraud. Mutual Life Ins. Co. v. Hilton-Green, 241 U.S. 613, 622 36 Sup. Ct. 676; Lewis v. New York Life Ins. Co., 201 Mo. App. 48, 209 S.W. 625; Bankers Life Ins. Co. v. Miller, 100 Md. 1, 6, 59 A. 116, Mutual Life Ins. Co. v. Hurni Packing Co., supra; 2 Joyce on Insurance (2d Ed.) § 1902; Vance on Insurance, 269. If it were necessary to prove an intent to deceive, such intent would be inferred from the making of the false representations with knowledge that they were false. Hammatt v. Emerson, 27 Me. 308, 326.
The law as stated in the State Bank Trust Co. case remains the law in Connecticut at this time.
In the case of Bristol v. Commercial Union Life Ins. Co. of America,211 Conn. 622 (1989), the distinction raised in that case was that the applicant never signed the application for the life insurance proceeds with the defendant insurance company. Therefore, there was no ratification by the insured of the statements made in application and the insurance company could not rely on the answers to contest the policy. However, that case does not apply in this matter as there is specific ratification of the answers in the application by the insured, Sherman.
Reference is made by the court to Pinette v. Assurance Co. of America,52 F.3d 407 (2nd Cir. 1995), wherein the Second Circuit Court of CT Page 2864 Appeals performed an extensive review of the Connecticut law relative to material misrepresentations made in the application for insurance coverage by the insured. The court concluded that to prevail on the defense of recission of the policy the insurance company, under Connecticut law, must prove three elements: "(1) a misrepresentation (or untrue statement) by the plaintiff which was (2) knowingly made and (3) material to the defendant's decision whether to insure." Id., 409.
The court in Pinette distinguished a knowing misrepresentation from an innocent misrepresentation which results from"ignorance mistake or negligence." Id., 409. The court found that in Connecticut, ". . . an applicant for insurance has an affirmative duty `to inform himself of the content of the application signed by him, under penalty of being bound by the representations recorded therein.'" Id., 410. The Pinette court further found regarding the materiality of a misrepresentation that, "Under Connecticut law, a misrepresentation in the application for life or health insurance concerning the applicant's prior medical history is material to the risk as a matter of law . . ." Id., 411.
In view of the Pinette court analysis, this court further reviewed the case of Paul Revere Life Ins. Co. v. Pastena, 52 Conn. App. 318 (1999). In Paul Revere, Id., the court cited the following regarding the law in Connecticut:
 An insurer has a right to rescind for a material misrepresentation on an insurance application if it is not an innocent misrepresentation, but one "known by the insured to be false when made." Middlesex Mutual Assurance Co. v. Walsh, 218 Conn. 681, 692, 590 A.2d 957
(1991).
Paul Revere Life Ins. Co. v. Pastena, supra, 323.
The court further stated:
"Rescission of a contract is an appropriate remedy if there has been a material misrepresentation of fact upon which a party relied and which caused it to enter the contract. . . . Rescission, simply stated, is the unmaking of a contract. It is a renouncement of the contract and any property obtained pursuant to the contract, and places the parties, as nearly as possible, in the same situation as existed just prior to the execution of the contract. A condition precedent to rescission is the offer to restore the other party to its former condition as nearly as CT Page 2865 possible." (Citation omitted.) Kavarco v. T.J.E., Inc., 2 Conn. App. 294, 298-99, 478 A.2d 257 (1984).
Id., 325.
This court finds that Prudential attempted to restore the plaintiff to their former condition as nearly as possible by its letter to the plaintiff, Frances H. Sherman, dated March 24, 1998 whereby Prudential returned all premiums paid on the policy to the plaintiff, plus interest, in view of the material misrepresentations made by Sherman in the application thereby denying coverage under the life insurance policy.
Conclusion
Based on the findings made by the court, as well as, the documented case law, this court concludes that the life insurance policy issued by Prudential on the life of Sherman, bearing policy #64755515 is rescinded due to the material misrepresentations made in the application regarding the health of the insured, Sherman.
Therefore, the court grants the defendant, Prudential's motion for summary judgment. In view of the court's finding regarding Prudential, the court further grants the defendant Dowling's motion for summary judgment on the basis of the material misrepresentations made by Sherman do not impose any liability on Dowling as the agent. The plaintiff's motion for summary judgment is denied based on the court's finding in favor of the defendants.
Judgment shall enter accordingly.
Agati, J.